Ann Heffernan POTTER,
Petitioner–Appellant,

v.

Scott Ellis POTTER, Respondent–
Respondent.

Nos. 24465, 24727.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 8, 2002.

Dennis Owens, Kansas City, MO, for appellant.

David V. Collignon, Ozark, MO, for respondent.

JAMES K. PREWITT, Presiding Judge.

This consolidated appeal follows the trial court's order modifying the child support obligations of Scott Ellis Potter ("Father") and an order sustaining Father's motion to quash garnishment. Ann Heffernan Potter ("Mother") raises five points on appeal, four alleging error in the modification of Father's child support and one alleging error due to the trial court's failure to provide a record of the hearing for the motion to quash garnishment.

On August 2, 1995, the trial court entered a decree dissolving the marriage between Mother and Father. The decree incorporated, in full, a marriage settlement agreement that specified, in part, that Father would pay Mother $2,250 per month as child support for their one minor child ("Child").

On January 16, 2001, Father filed a motion to modify child support. In his first amended motion to modify the decree, Father cited substantial and continuing changed circumstances, including a decrease in income; a recalculation of child support under Rule 88.01 that would result in a 20% or greater difference in child support from the original decree; and a change in the terms of the marital settlement agreement related to educational expenses, trusts, life insurance, visitation, and transportation due to his transfer to the Kansas City area and reduction in income.

On July 6, 2001, the trial court entered a judgment and decree of modification. The trial court found that a substantial and continuing change had occurred in the circumstances of the parties and the needs of Child, which made the terms of the original judgment unreasonable as it related to child support.

The judgment decreased Father's child support obligation, and he was ordered to pay $1,141 per month retroactive to February 1, 2001. The trial court also found that Father was in arrears $6,003.69 for maintenance and $21,313.31 for child support, which was adjusted for the retroactive modification. The judgment ordered the Missouri Family Support Center and the circuit clerk of Christian County to adjust the existing wage assignment to reflect a withholding of an amount equal to one month's current support plus an additional one half month's support for arrearages in child support and maintenance.

On July 12, 2001, the Missouri Division of Child Support Enforcement filed an order/notice to withhold income for child support, listing America's Best Contacts & Eyeglasses, Inc. ("America's Best") as the employer/withholder. The order/notice stipulated that $1,711.50 be withheld and paid to the Family Support Payment Center monthly, with $1,141 for current support and $570.50 for past-due support ($370.50 for child support arrearage and $200 for maintenance arrearage). On August 23, 2001, the trial court issued an execution/garnishment for service to America's Best.[1]

Father filed a motion to quash the execution/garnishment on November 13, 2001, which referenced the amount that the trial court had established in the decree of modification to satisfy the maintenance and child support arrearages—one half of one month's total child support obligation. The motion further stated that the trial court had "previously established a sum to be withheld from [Father's] wages to satisfy support arrearages. Any additional garnishments will work an undue hardship upon [Father]." On December 18, 2001, the trial court sustained Father's motion to

---

1. The record on appeal does not contain a copy of this execution/garnishment.

quash the August 23, 2001 execution/garnishment, discharging America's Best as garnishee.

■ Mother's first four points on appeal claim error in the trial court's order modifying Father's child support obligation. We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Schottel–Lehde v. Schottel,* 75 S.W.3d 359, 363 (Mo.App.2002). The determination to award a modification in child support lies within the discretion of the trial court, and the trial court's decision will be reversed only for abuse of discretion or misapplication of the law. *Mann v. Hall,* 962 S.W.2d 417, 419 (Mo.App.1998). We will set aside the judgment on the ground that it is against the weight of the evidence with caution and only if we have a firm belief that the judgment is wrong. *Schottel–Lehde,* 75 S.W.3d at 363.

As the trial judge is in a better position than this court to determine the credibility of the parties and witnesses, we grant the trial court due deference in that regard. *Dimmitt v. Dimmitt,* 849 S.W.2d 218, 220 (Mo.App.1993). If the determination by the trial court is supported upon any reasonable theory by the law and the evidence, this court must affirm. *Hicks v. Hicks,* 798 S.W.2d 524, 526 (Mo.App.1990). We consider all facts for which the trial court makes no specific findings to have been found in accordance with the result reached. *Dixon v. Dixon,* 62 S.W.3d 589, 596 (Mo.App.2001).

■ Mother and Father had a marital settlement agreement. Such an agreement, although contractual in nature and incorporated into the dissolution decree, may not preclude the trial court from modifying child support. *See McCreary v. McCreary,* 954 S.W.2d 433, 452 (Mo.App.

1997). Child support awards remain subject to modification until the trial court loses jurisdiction. *Id.*

■ A child support award may only be modified upon a showing of changed circumstances so substantial and continuing as to make the terms of the original award unreasonable. *Mann,* 962 S.W.2d at 420. Once the trial court makes a determination that the required level of changed circumstances has occurred, its primary concern is the best interests or welfare of the child. *Dixon,* 62 S.W.3d at 596; *see also Brown v. Brown,* 19 S.W.3d 717, 724 (Mo.App.2000). Father, as the party seeking modification, has the burden of proving that he is unable to support Child in the manner contemplated at the time the settlement agreement was incorporated into the dissolution decree. *Brown,* 19 S.W.3d at 724.

■ Directing our attention to Mother's specific points, in her first point, she claims that the trial court erred in modifying Father's child support obligation because Father failed to establish that any substantial or continuing changed circumstances occurred that made the original decree unreasonable. A change in the parties' financial circumstances or in a child's needs may evidence a showing of substantial and continuing change. *Welker v. Welker,* 902 S.W.2d 865, 867 (Mo.App. 1995).

Father argues that there was substantial evidence presented under which the trial court could have determined that there was no longer a need for Child to receive homeschooling. Mother and Father both testified that Child was not consistently homeschooled since the time of the original decree. Mother testified that the decision was made because Father had stopped paying the full child support amount.

Father admitted not paying the full amount. Father, an optometrist, was self-employed at the time of the original decree. From March 1997 to June 1998, he continued to be self-employed, but was required to set up a new practice because his lease had been cancelled. Father encountered financial difficulty during this time and was unable to send complete maintenance or support payments.

In terms of the home schooling timeline, in the spring of 1998, when Child would have be in the third grade, Mother enrolled him in the Ozark public school system. While in the Ozark system, he was placed in a one day a week pullout program for gifted students. Mother later transferred him to New Covenant Academy, a private school in Springfield, for the fourth grade. Mother testified that the private school was attempting to implement a more elaborate program for gifted students; however, that program never materialized and Child only had access to a one day a week program there as well.

Mother testified that, although she and Father agreed that she would resume homeschooling for Child, she was unable to because Father continued to be in arrears on child support. She attempted to homeschool Child part-time while she worked, but switched to full-time after she filed with the Missouri Division of Child Support Enforcement for collection of child support. At time of trial, Child was being homeschooled and ready to start the sixth grade; he was twelve years old.

Father testified to a similar timeline regarding when Child was or was not homeschooled. He further testified that, at the time of the original decree, he agreed with Mother that homeschooling was in Child's best interest. However, he felt that Child's educational needs could now best be met through either the Ozark public school system or by the New Covenant Academy, and that those needs were met when Child attended those institutions.

One of Mother's witnesses, Robert Roach, the Director of Gifted Education at Drury University, testified that, based on intelligence test scores, Child was considered profoundly gifted. Mr. Roach stated his opinion that in Ozark, where Child lived with Mother, the public school system did not have an adequate program to suit Child's educational needs.

According to Mr. Roach, the needs of a profoundly gifted child would best be met through a full-time program, whether that be private tutoring, public school, or private school. Mr. Roach agreed that, unless a parent was also profoundly gifted, there would be a point at which the child would surpass the teaching skills of the parent, which would occur at least by the time the child reached middle school age.

Mr. Roach indicated that the Springfield school district has a "near" full-time gifted program that began in middle school and continued through the high school level. The program within the Springfield school district is limited to residents of the district. Mr. Roach testified that, in his opinion, a parent of a profoundly gifted student, similar to a parent of a child with Olympic swimming ability, would "give up everything to get with the very best .... [and] concentrate on that ability." In the end, Mr. Roach indicated that the program in the Springfield school district was a better alternative than Child's current homeschooling situation in Ozark, but that, strictly considering educational opportunities available in Ozark for someone of Child's academic caliber, homeschooling plus various supplemental activities would be the most appropriate. Mr. Roach was unfamiliar with the New Covenant Academy.

There may well have been sufficient evidence before the trial court to serve as a basis for a determination that Child's needs had changed related to the necessity or appropriateness of homeschooling. However, as stated in the *Brown* case, in a situation where the child support obligation was originally structured according to a provision in a settlement agreement, the party seeking modification has the burden of proving that he or she is unable to support the child in the manner contemplated at the time the settlement agreement was incorporated into the dissolution decree. *Brown*, 19 S.W.3d at 724.

Father testified to having encountered financial difficulties in 1997 and 1998, a time period that reflected when Child was not homeschooled. In June 1998, Father became an employee of America's Best and, according to his own testimony, experienced a significant increase in income. When Father's counsel asked whether that income from America's Best was less than his income at the time of the original decree, Father stated that it was more than his income then.

The record is devoid of any other evidence showing a decrease in Father's income or a decline in his overall financial standing since the time of the original decree. In addition, although Father argues that there was substantial evidence that the needs of Child had changed and that there would be no cost to educate Child in the Springfield public school system, which Mr. Roach stated was the best alternative, enrolling Child in that system would require that Mother and Child move to Springfield. There are cases in which a trial court has modified the dissolution judgment changing a child's school district; however, we find no such cases in which a trial court advocated such a change unless one of the parents lived in that school

district. *See Loebner v. Loebner*, 71 S.W.3d 248, 260 (Mo.App.2002).

Mother's first point has merit. Father failed to meet his burden of proving substantial and continuing changed circumstances to warrant the modification of child support. The judgment is reversed with respect to any modification of child support.

In Point II, Mother claims that the trial court erred in using Civil Procedure Form 14 to calculate Father's child support obligation. Point I is dispositive as it relates to Point II; however, we will address it to clarify the use of the Form 14 in situations similar to the one in the case at bar. Mother is correct that using the Form 14 to establish a prima facie showing of a substantial and continuing change in circumstances is not applicable to situations where the Form 14 was not used as the basis for the child support amount in the original decree. *Brown*, 19 S.W.3d at 724.

The trial court did not use the Form 14 in that manner. The Form 14 was only used to calculate the amount of the modified child support, after the trial court had determined, albeit incorrectly, that a substantial and continuing changed circumstance had occurred. In a modification proceeding, it is mandatory for the trial court to use the Form 14 to calculate the child support amount. *Mann*, 962 S.W.2d at 420. Point II has no merit.

In Point III, Mother argues that the trial court erred by not specifying in the modification order that Father's arrearage was the principal amount because he also owes interest of 1% per month on that amount. In the modification judgment, the trial court found that Mother and Father had stipulated that Father was in arrears for maintenance for $6,003.69 and child support for $26,858.31. The trial

court adjusted the child support arrearage based on its finding of a substantial and continuing changed circumstance, and the new amount was listed as $21,313.31. There is no discussion of interest in the judgment.

Based on the discussion in Point I, the trial court erred by adjusting the child support arrearage and the judgment must be reversed in that respect. The trial court is directed to enter judgment reinstating the stipulated amount for child support arrearage of $26,858.31. *See Biby v. Jones,* 886 S.W.2d 665, 667 (Mo.App. 1994).

■ With regard to the interest, to collect delinquent interest on child support or maintenance, a party can proceed under § 454.520.5, RSMo 2000, by filing the required affidavit or, alternatively, by filing a motion to construe and enforce the judgment. *Bohac v. Akbani,* 29 S.W.3d 407, 414 (Mo.App.2000). The only motion before the trial court was Father's motion to modify. Mother neither filed an affidavit nor a motion to construe and enforce the judgment. In such cases, it is error for the trial court to award interest. *In re Marriage of Overhulser,* 962 S.W.2d 951, 953 (Mo.App.1998). Mother did not meet the necessary condition precedents. *See id.* at 952.

■ In Point IV, Mother claims that the trial court erred in ruling that a substantial and continuing change in circumstance had occurred that made the original decree unreasonable without identifying the change. Mother did not request specific findings of facts. In the absence of such a request, Rule 88.01 does not require the trial court to record specific findings of fact regarding the change found to have occurred. *See Schriner v. Edwards,* 69 S.W.3d 89, 94 (Mo.App.2002); *see also Hicks,* 798 S.W.2d at 526.

Point V involves Father's motion to quash garnishment and Mother's argument that the trial court erred in sustaining the motion. Within her point, Mother specifically indicates that because appellate review requires that certain determinations made by a trial court be on the record, failure of the trial court to provide a record of the hearing on the motion to quash renders this court unable to reasonably and accurately conclude whether the trial court erred.

■ The record reflects no request by Mother for a hearing on the motion to quash garnishment. If the parties, their attorneys, or the trial court desired to have proceedings that took place "off the record" take place "on the record," it was their obligation to so request at the time the hearing occurred. *See Leahy v. Leahy,* 858 S.W.2d 221, 228 (Mo. banc 1993). "Parties cannot acquiesce, by silence or otherwise, to an informal handling of a matter at trial without a record and then seek on appeal to have the appellate court determine the sufficiency of the evidence when nothing was preserved for review." *Volvo Finance North America, Inc. v. Raja,* 754 S.W.2d 955, 957 (Mo.App.1988).

Further, the execution/garnishment issued for service on August 23, 2001, which was quashed by the trial court when it sustained Father's motion, is not a part of the record. Mother, as appellant, has the duty to file a record on appeal that contains "all of the record, proceedings and evidence necessary to the determination of all questions presented." Rule 81.12(a).

■ By her failure to request a record on the motion to quash and her failure to furnish a complete record, Mother has not met her burden. We have no basis on which to proceed on this point.

The judgment is reversed with respect to the modification of child support and the

cause is remanded to the trial court with directions for it to proceed in a manner not inconsistent with this opinion. Father's motion to dismiss the appeal, which was taken with the case, is denied.

PARRISH, J., concurs.

RAHMEYER, C.J. dissents in separate opinion.

## NANCY STEFFEN RAHMEYER, Chief Judge, dissenting.

I respectfully dissent on Mother's first claim of error in the judgment for two reasons. First, the trial court found a change in circumstances in the needs of the child. Specifically, the trial court found the original child support was based on a compromise of the parents based upon the needs of the child and a change in the circumstances of the needs of the child had occurred. That finding is supported by the evidence of Mother's expert concerning the child's needs and the Form 14 and income and expense statement submitted by Mother.

In 1995 the parties entered into an agreement to allow Mother to stay home with their five-year-old son to homeschool him. They agreed to Father paying maintenance, the mortgage and substantial child support. The calculations were done without a Form 14 calculation and Father was not represented by an attorney in the dissolution. Mother submitted a Form 14 to indicate the extraordinary expenses necessary for homeschooling the child. Mother had not incurred many, if any, of the expenses listed in her Form 14. She listed such items as a new video player, a new set of encyclopedias and foreign language tutoring. The total extraordinary expense was over $14,000 for the child to be homeschooled in addition to the Form 14 guideline amount, which arguably included extracurricular activities. Mother also failed to list any contribution on her part for the financial support of the child even though she was capable of earning $38,000 per year.

Mother's expert testified that a "profoundly" gifted child outstrips the teacher in 4th or 5th grade. This child was not even performing at his chronological age despite being profoundly gifted. Mother's own expert recommended fulltime gifted education. Substantial evidence supports the trial court's implicit finding that homeschooling was not meeting this child's needs and thus a change of circumstances had occurred.

Second, I would find a substantial and continuing change in the financial circumstances of the parties. In the seven years following the parties initial agreement, the parties agreed that Father suffered an economic setback when his lease for his business was terminated. By the time Father got back on his feet financially, the substantial arrearage resulted in the garnishment of his income being almost twice the amount that he had for his own use (Mother had the use of $3,700 per month whereas Father was left with $2,000 per month). Furthermore, Mother was employed earning $38,000 per year for two years prior to the hearing. Despite these facts, because Father was earning as much income at the time of the hearing the majority opinion finds no changes in economic circumstances. The majority opinion finds that because the first child support calculation was done without using the guidelines, the twenty-percent deviation from the guidelines is immaterial, as is the temporary setback. There is no way for Father to come out ahead financially in the near future. I would defer to the credibility findings of the trial court and affirm the judgment.