**Gary D. EATON, Appellant,**

v.

**Margaret Jean (Eaton) BELL, Respondent.**

### No. WD 62386.

Missouri Court of Appeals,
Western District.

Jan. 27, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2004.

Edward C. Clausen, Jefferson City, for Appellant.

Josh Oxenhandler, Columbia, for Respondent.

Before JOSEPH M. ELLIS, C.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

Dr. Gary Eaton appeals the judgment of the trial court denying his motion to modify child support and maintenance and sustaining Margaret (Eaton) Bell's motion for contempt. The judgment of the trial court denying Dr. Eaton's motion to modify child support and maintenance is affirmed. The appeal of the contempt judgment and order of commitment is dismissed as premature.

### Facts

Dr. Eaton and Ms. Bell were divorced in May 1997. The decree of dissolution of marriage incorporated a marriage settlement agreement. The parties were awarded joint legal custody of their three minor children with Ms. Bell having physical custody of the children subject to Dr. Eaton's reasonable rights of visitation. Although the calculated presumed correct child support amount was $1,635 per month, the parties agreed that Dr. Eaton would pay $1,000 per month because he had assumed responsibility for payment of substantially all of the debt acquired during the marriage. Similarly, although the trial court had calculated maintenance under section 452.335, RSMo 2000, as $1,000 per month, the parties agreed that Dr. Eaton would pay the sum of $500 per month in maintenance for the same reason.

During the marriage, Dr. Eaton worked as an emergency room physician. Ms. Bell was not employed during the marriage. Dr. Eaton continued to work as an emergency room physician until 2000, when his employment was terminated and his staff privileges revoked after an investigation of a patient's death while under his care.

In February 2001, Dr. Eaton filed a motion to modify maintenance and child support. In his motion to modify, Dr. Eaton alleged that since the dissolution decree, a change in circumstances so substantial and continuing had occurred that made the terms of the decree unreasonable. Specifically, Dr. Eaton alleged that he was currently seeking employment and had not had steady income since January 2000, Ms. Bell had obtained full-time employment, the children received an inheritance to pay for their college educations, and the children were currently residing with each party approximately equal amounts of time. Ms. Bell filed an answer and a countermotion to modify seeking an increase in child support and maintenance. Thereafter, Dr. Eaton filed a motion for contempt alleging that Ms. Bell had failed to provide him with any of her federal income tax returns as required by the dissolution decree. Ms. Bell also filed a motion for contempt alleging that Dr. Eaton was in arrears in maintenance and child support in the amounts of $6,000 and $5,101.32, respectively, totaling $11,101.32.

A hearing was held on the motions. Following the hearing, the trial court entered its judgment denying Dr. Eaton's motion to modify. The trial court found that Dr. Eaton had failed to show a substantial and continuing change of circumstances that makes the terms of the original maintenance and child support awards unreasonable in that the decrease in his income is voluntary and that he is capable of earning a substantial income. The trial court also denied Dr. Eaton's motion for contempt and Ms. Bell's countermotion to modify. Finally, the trial court sustained Ms. Bell's motion for contempt finding that Dr. Eaton had willfully, wantonly, contumaciously and without good cause failed to pay maintenance and child support. It ordered Dr. Eaton to pay $11,101.32 to Ms. Bell in back maintenance and child support, committed Dr. Eaton to the Boone County Jail until the sum was paid in full, stayed execution of the commitment, and allowed Dr. Eaton to purge himself of contempt by paying delinquent maintenance and child support payments at the rate of $300 per month. This appeal by Dr. Eaton followed.

### Standard of Review

This is a court-tried case; therefore, the judgment of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Potter v. Potter*, 90 S.W.3d 517, 520 (Mo.App. S.D. 2002); *Adams v. Adams*, 51 S.W.3d 541, 546 (Mo.App. W.D.2001). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the judgment, and all evidence and inferences to the contrary are disregarded. *DeArriba v. DeArriba*, 100 S.W.3d 134, 137 (Mo.App. E.D.2003); *Adams*, 51 S.W.3d at 546. Because a trial court is in a better position than an appellate court to determine the credibility of the parties and witnesses, it is granted due deference in that regard. *Potter*, 90 S.W.3d at 520; *Adams*, 51 S.W.3d at 546 (citation omitted).

### Maintenance

In his first point on appeal, Dr. Eaton claims that the trial court erred in denying his motion to modify maintenance. He asserts that the evidence established that he does not have the current ability to pay maintenance and that Ms. Bell is currently employed and able to meet her reasonable needs.

Maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms of the original award unreasonable. § 452.370.1, RSMo 2000; *Laffey v. Laffey*, 72 S.W.3d 143, 147 (Mo.App. W.D.2002). The purpose of section 452.370 is to impose a stricter standard for modification thereby discouraging recurring and insubstantial motions for modification. *Laffey*, 72 S.W.3d at 147. A change in circumstances warranting modification of maintenance exists where the obligor spouse is unable to pay maintenance at the assigned rate or the recipient of the support could meet her reasonable needs with a lesser amount of maintenance. *Id.* at 147–48. While a decrease in the income of the spouse paying maintenance or an increase in the income of the spouse receiving maintenance are both relevant factors for the court to consider, neither alone requires the court to modify the amount of maintenance previously ordered. *Id.* at 148. The ultimate issue is whether these changes are sufficiently substantial and continuing so as to make the original terms of the decree unreasonable. *Id.*

■ Voluntary loss of employment is not a substantial and continuing change of circumstances warranting modification of maintenance. *Leslie v. Leslie,* 827 S.W.2d 180, 183 (Mo. banc 1992). In considering a party's maintenance obligation, a trial court may impute income to a party according to what he could earn by use of his best efforts to gain employment suitable to his capabilities. *Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App. W.D.1994); *Hughes v. Hughes,* 761 S.W.2d 274, 276 (Mo.App. E.D.1988). A party's past, present, and anticipated earning capacity is competent evidence of the party's ability to pay maintenance. *Id.*

■ Dr. Eaton argues that a decrease in his income constituted a change in circumstances so substantial and continuing as to make the terms of the maintenance award unreasonable. He contends that the trial court's findings that his unemployment is voluntary and that he is capable of earning a substantial income were not supported by substantial evidence and were against the weight of the evidence. Dr. Eaton introduced evidence that his employment as an emergency room physician was terminated and his staff privileges revoked in 2000 after an investigation in relation to a patient's death while under his care. A report was made to the National Practitioner Data Bank regarding the incident. The National Practitioner Data Bank is the federally mandated repository for disciplinary actions taken against healthcare providers. Reports made to the repository are available to any entity with a legitimate need to evaluate a physician's qualifications such as hospitals, malpractice insurance companies, medical groups, and state boards. A report was also made to the State Board of Healing Arts, and the Board restricted Dr. Eaton from working in the field of emergency medicine. Dr. Eaton testified that since he lost his job, he has attempted to become employed as a physician by applying to thirty different hospitals around the country. Dr. Eaton, however, remained unemployed at the time of trial. He presented evidence that he earns $1,894 per month, which includes a disability pension for his previous work as a professional firefighter[1] and a small income doing part-time ("locum tenes") work when available. Dr. Eaton listed his expenses as $5,237.58 per month.

Despite the evidence of his lack of success in his job hunt, Dr. Eaton testified that he remains hopeful of obtaining a job in the medical field. Furthermore, while the evidence showed that Dr. Eaton applied for positions throughout the country including in Alaska, Virginia, Georgia, and Florida, the evidence also showed that Dr. Eaton's job search was somewhat limited. For instance, he testified that his intent was to find employment where he could work four day a week and then return to Columbia on his days off to see his children. The trial court noted, "If this evidence were credible, then the same would surely impact upon his ability to convince a future employer that he was serious about his job." The record supported such finding.

Additionally, evidence was presented that Dr. Eaton is well-educated and highly trained with substantial work experience in several fields, yet he has failed to seek employment in any other field. His educational background includes an Associate of Arts in Fire Science, Paramedic Certification, a Bachelor of Science in Biology, a Doctor of Chiropractic, a Doctor of Osteopathy, a Residency in Physical Medicine and Rehabilitation, and a Musculo–Skeletal Fellowship in Physical Medicine. Dr. Ea-

[1] He was considered disabled for respiratory function.

ton is licensed to practice as a chiropractor in Utah and worked as a chiropractor for three years before attending medical school. He has not, however, attempted to get licensed in Missouri or any other state or to seek employment as a chiropractor in any state. Thus, the trial court's findings that Dr. Eaton's unemployment is voluntary and that he is capable of earning a substantial income were supported by substantial evidence and were not against the weight of the evidence.

Dr. Eaton also argues that the trial court failed to consider the increased income of Ms. Bell to provide for her own reasonable needs in determining whether a change in circumstances had occurred. An affirmative duty is imposed on the recipient spouse to seek adequate employment to become self-supporting. *Adams,* 51 S.W.3d at 548 (quoting *Hileman v. Hileman,* 909 S.W.2d 675, 679 (Mo.App. E.D. 1995)). Passive acceptance of support over an extended period of time without significant efforts to become self-supporting may constitute a change of circumstances justifying modification of maintenance. *Id.* (quoting *Hileman,* 909 S.W.2d at 680). Where, however, the recipient spouse's income has increased, but her earnings remain insufficient to meet her needs, a change in circumstances has not occurred. *Draper v. Draper,* 982 S.W.2d 289, 292 (Mo.App. W.D.1998); *Norman v. Norman,* 916 S.W.2d 209, 212 (Mo.App. E.D.1995).

Ms. Bell was not employed during the marriage. After the parties separated, she worked as a waitress at a Cracker Barrel restaurant. Ms. Bell then attended surgical tech school after the divorce and eventually obtained a job in that field at Boone County Hospital. She subsequently accepted a different position at Boone County Hospital as the billing and scheduling coordinator for the operating room. Ms. Bell earns $2,033 per month. Her monthly expenses exceed $3,100. Dr. Eaton did not dispute these amounts. Although Ms. Bell has endeavored to become self-sufficient, she remains unable to meet her reasonable needs with her own income.[2] Dr. Eaton failed to show changed circumstances so substantial and continuing as to make the terms of the original maintenance award unreasonable. The point is denied.

## Child Support

In his second point on appeal, Dr. Eaton claims that the trial court erred in denying his motion to modify child support. Dr. Eaton claims that insufficient evidence supports the trial court's finding that he is capable of earning an income similar to that he earned at the time of the dissolution and, thus, that no substantial and continuing change of circumstances had occurred to warrant modification of the child support. He also argues that the trial court failed to indicate on the record the presumed amount of child support by either adopting one of the parties' Form 14 or calculating its own. Finally, Dr. Eaton claims that the trial court failed to give him a Line 11 credit for the time he has custody of his children.

Like maintenance, child support may be modified only upon a showing of changed

---

2. Dr. Eaton very briefly mentions that Ms. Bell received a $120,000 inheritance from which she can meet her reasonable needs. The evidence reveals that Ms. Bell used the inheritance to pay down debt, thereby reducing her monthly expenses. Ms. Bell testified that she paid down her mortgage by $60,000, paid attorney's fees incurred during the divorce proceedings of $20,000, paid $15,000 in debt apportioned to her in the divorce, invested $10,000 in IRAs, and purchased a new PT cruiser. Despite lowering her monthly expenses, Ms. Bell remains unable to meet those expenses with her income.

circumstances so substantial and continuing as to make the terms of the original award unreasonable. § 452.370.1, RSMo 2000. Once the party seeking modification has met the burden of showing changed circumstances, the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable Supreme Court Rules. § 452.370.2, RSMo 2000.

A prima facie case of a change of circumstances can be made by showing that application of the child support guidelines and criteria set forth in section 452.340 and Supreme Court Rules to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more. § 452.370.1, RSMo 2000. The twenty-percent provision is not applicable in this case, however, because the existing child support amount was not based upon the presumed amount under the child support guidelines. *Id.; Brown v. Brown,* 19 S.W.3d 717, 724 (Mo.App. W.D.2000). Instead, a substantial and continuing change in circumstances may be established in other ways. *Brown,* 19 S.W.3d at 724. A change in the parties' financial circumstances or in the children's needs may evidence a showing of substantial and continuing change. *Potter v. Potter,* 90 S.W.3d 517, 520 (Mo.App. S.D. 2002). The party seeking modification has a heavy burden of proving that he is unable to support the children in the manner contemplated at the time the settlement agreement was incorporated into the dissolution decree. *Id.; Brown,* 19 S.W.3d at 724.

In denying his motion to modify child support, the trial court found that Dr. Eaton failed to show changed circumstances so substantial and continuing as to make the terms of the existing award unreasonable. As in denying his motion to modify maintenance, the trial court found that Dr. Eaton's unemployment is voluntary and that he is capable of earning a substantial income. As discussed under point one above, these findings were supported by substantial evidence and were not against the weight of the evidence. Dr. Eaton failed to satisfy the heavy burden of proving that he is unable to support the children in the manner contemplated at the time the settlement agreement was incorporated into the dissolution decree. And because Dr. Eaton failed to meet his burden of showing changed circumstances, the trial court was not required to compute the presumed amount of child support by accepting one of the parties' Form 14 or completing its own or to compute the Line 11 overnight visitation adjustment. The trial court, therefore, did not err in denying Dr. Eaton's motion to modify child support. The point is denied.

### Contempt

In his final point on appeal, Dr. Eaton claims that the trial court erred in sustaining Ms. Bell's motion for contempt. He contends that Ms. Bell failed to prove that he has the ability to pay child support and maintenance. Dr. Eaton also argues that the trial court failed to make specific findings regarding his ability to pay before issuing the commitment order.

A civil contempt order is appealable; but, like other judgments, it must be final before it may be appealed. *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 780 (Mo. banc 2003). A civil contempt order is not final for purposes of appeal until enforced. *Id.* at 781. When "enforcement" occurs depends on the remedy. *Id.* When the remedy is imprisonment, as in this case, the traditional rule is that actual incarceration pursuant to an order or warrant of commitment is required to enforce a contempt order. *Id.*

Additionally, the issuance of an order of commitment is sufficient to enforce a contempt order. *Id.* at 781–82.

In *In re Marriage of Crow and Gilmore,* the Missouri Supreme Court recently found that a contempt judgment that conditioned incarceration on Husband's failure to purge the contempt within sixty days and provided that if Husband failed to purge the contempt, an order of commitment *may* be issued, was not enforced. *Id.* at 782. Although Husband failed to purge himself of the contempt, an order of commitment never issued. *Id.* The Court reasoned that because the trial court never imposed the specific remedy of incarceration, the contempt order was not enforced. *Id.* The contempt order, therefore, remained interlocutory and unappealable. *Id.*

Unlike in *Crow,* the trial court issued a warrant of commitment in this case. The trial court, however, stayed the warrant of commitment, thereby effectively negating the warrant of commitment. Because the warrant of commitment was stayed, Dr. Eaton was not subject to imminent incarceration, and the contempt judgment remained a mere coercive threat. The contempt judgment in this case, therefore, was not enforced and did not become final and appealable.

The judgment of the trial court denying Dr. Eaton's motion to modify child support and maintenance is affirmed. The appeal of the contempt judgment and order of commitment is dismissed as premature.

ELLIS, C.J., and LOWENSTEIN, J., concur.