**Linda Susan KELLER, Respondent,**

**v.**

**Karl Wayne KELLER, Appellant.**

**No. 27260.**

Missouri Court of Appeals,
Southern District,
Division One.

March 19, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 2007.

Application for Transfer Denied
June 26, 2007.

Devon F. Sherwood, Springfield, for Appellant.

J. Matthew Miller, Baird, Lightner, Millsap & Harpool, Springfield, for Respondent.

JOHN E. PARRISH, Judge.

This is the appeal of a modification of dissolution of marriage judgment. The modification changed the child custody provisions in the dissolution judgment and increased the amount of child support Karl W. Keller (father) was to pay Linda Susan Keller (mother). The modification judgment ordered father to pay mother's attorney fees, together with other costs for psychological evaluation preparatory to the evidentiary hearing and guardian ad litem fees. The judgment also changed the means by which college expenses father was ordered to pay would be calculated. Judgment was also entered for an amount the motion court found mother had incurred for expenses the dissolution judgment ordered father to pay. This court affirms.

The modification judgment increased the amount of child support father was to pay from $1,750 per month to $6,035. Mother

was awarded sole legal and physical custody of the parties' two children. The parties previously had joint legal and physical custody with mother being the primary physical custodian and father having specified periods of physical custody. Per the modification judgment, father was not allowed direct contact with either child until he complied with § 452.400.[1] Father was ordered to pay $51,664.79 to mother's attorneys.

Mother was awarded judgment in the amount of $1,705 as reimbursement for a psychological evaluation and costs incurred by the examining psychologist in preparation for and attendance at trial, and judgment in the amount of $28,746.99 for unreimbursed expenses for the children that the dissolution judgment ordered father to pay. The expenses father would be required to pay for each child's college costs were identified as "the cost of tuition, fees, books, and dormitory costs for room and board at Drury University, Springfield, Missouri, regardless of what Institution the child attends." The standard had previously been the costs at Southwest Missouri State University. Father was ordered to pay guardian ad litem fees in the amount of $3,251.75.

Father presents four points on appeal. He contends the trial court erred in modifying child support (Points I and III); child custody (Point II); and the award of mother's attorney fees (Point IV).

▮▮▮ Trial of a motion to modify a dissolution judgment is without a jury; thus, appellate review is undertaken in accordance with Rule 84.13(d).

[T]his court must affirm the trial court's judgment unless it is not supported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

[*Bunch v. Bunch,* 746 S.W.2d 634, 635 (Mo.App.1988) ]. The trial court is in the best position to judge the credibility of witnesses. *Weir v. Weir,* 748 S.W.2d 190, 191 (Mo.App. E.D.1988). Deference is accorded the trial judge even if there is evidence which might support a different conclusion. *Hughes v. Hughes,* 761 S.W.2d 274, 276 (Mo.App. E.D.1988).

*Reese v. Reese,* 885 S.W.2d 39, 40 (Mo.App. 1994).

## Child Support

The motion court made the following finding with regard to child support:

The parties have both submitted Form 14's. The Court rejects [father's] Form 14, as [father's] income does not reflect significant employment related financial compensation. The Court finds that [mother's] calculation of [father's] monthly gross income is persuasive and the explanation and analysis of the derivation of [father's] monthly gross income is support [sic] by substantial evidence and the Court finds that [father's] monthly gross income for purposes of calculating child support should be $45,459.00. The income and benefits derive [sic] from General Pet, Inc., the Court considers is income for purposes of computing this child support as it is a substantial financial benefit that is available to [father] that does have a positive impact on his ability to support his children. The Court adopts [mother's] exhibit "3A' [sic] and finds the presumed amount of support is $6,035 for two children. The Court, however, rejects [mother's] Exhibit "3B", a calculation for one child and the Court finds mathematical errors on line 6D and E, pursuant to the numbers presented on attachment B and C of that Exhibit and the Court

---

1. References to statutes are to RSMo 2000 unless stated otherwise.

calculates its own Form 14 and after considering all relevant factors pursuant to 452.340 RSMo., 2002, Supreme Court Rule 88.01 and Civil Procedure Form 14 and finds the presumed amount of support for one child, is $4,558.00.... *The Court finds that an application of the current financial circumstances of the parties to the Form 14 calculation worksheets does result in a change of child support of the presumed amount by more than 20% and therefore the Court finds that [mother's] request for a modification of child support should be sustained.* [Emphasis added.]

■ Point III is directed to the finding that the current amount of presumed child support exceeded the amount of child support previously awarded by more than 20%. Point III argues that the motion court erred in modifying child support on the basis of its finding that there was an increase of presumed child support of more than 20% over the amount of child support previously awarded because "the original support amount was not based upon the presumed amount pursuant to the child support guidelines as required by section 452.370.1 R.S.Mo."

■ The record before this court is unclear as to whether the child support the dissolution judgment awarded was the presumed amount based on a Form 14 calculation. Neither the dissolution judgment nor the Marital Settlement Agreement reference a Form 14 calculation. Mother, in her respondent's brief, however, acknowledged that the amount of child support awarded differed from the presumed amount pursuant to a Form 14 calculation. This court, therefore, accepts as fact that

the original amount of child support was not based on the presumed amount calculated pursuant to child support guidelines.[2] A reliance on the amount of presumed child support based on present calculations increasing more than 20% would, therefore, be inapplicable for purposes of establishing a change of circumstances. *Eaton v. Bell,* 127 S.W.3d 690, 697 (Mo.App.2004). ("The twenty-percent provision is not applicable ... because the existing child support amount was not based upon the presumed amount under the child support guidelines.")

■ Wife correctly suggests, however, that notwithstanding the inapplicability of the 20% change between the existing child support and what would now be the presumed child support for purposes of establishing a prima facie change of circumstances, other evidence of changed circumstances so substantial and continuing may support modification of child support. She contends such evidence was presented; that, for that reason, father was not prejudiced by the motion court's modification of child support.

■ *Eaton, supra,* explains that when the 20% provision is not applicable "a substantial and continuing change in circumstances may be established in other ways"; that "[a] change in the parties' financial circumstances or in the children's needs may evidence a showing of substantial and continuing change." 127 S.W.3d at 697. When a court incorrectly relies on a calculation based on the 20% change of presumed child support, there is no prejudice when other evidence of substantial and continuing change circumstances demon-

---

**2.** "Where a statement of fact is asserted in one party's brief, and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record." *State v. Bowling,* 734 S.W.2d 565, 568 (Mo.App.1987),

*citing Hammack v. White,* 464 S.W.2d 520, 522[4] (Mo.App.1971). *See also State v. Mouse,* 989 S.W.2d 185, 187–88 (Mo.App. 1999).

strates the original order of support is unreasonable. *McMickle v. McMickle*, 862 S.W.2d 477, 481 (Mo.App.1993). Mother alleged that there were substantial and continuing changes of circumstance so that the existing child support was unreasonable.

The dissolution judgment ordered father to pay mother child support in the amount of $1,750 per month, that he maintain a life insurance policy for the benefit of the children, and pay the cost of each child's college expenses. Father was also to maintain medical and dental insurance for each child and was to pay all medical, dental, orthodontic, counseling, pharmaceutical, and eye care expenses not covered by insurance, including deductibles and co-payments, and pay all costs of the children's private education at Greenwood Laboratory School and costs of tutoring at Bellwether Learning Center.

■ Evidence was presented that father had failed to pay the children's medical and educational expenses. There was evidence that the children's tutoring at Bellwether Learning Center had been discontinued because father failed to pay the required costs. Mother was awarded judgment in the amount of $28,746.99 for expenses father was ordered to pay, but had not. A non-custodial parent's failure to pay court-ordered child support expenses is evidence of a substantial and continuing change of circumstances that may warrant modification of that parent's child support obligation. *Welker v. Welker*, 902 S.W.2d 865, 867 (Mo.App.1995); *Bellis v. Bellis*, 664 S.W.2d 12, 14 (Mo.App. 1983); *Williams v. Williams*, 542 S.W.2d 563, 566 (Mo.App.1976).

■ Mother also asserted as a basis for change of circumstances that the children's general living expenses had increased. The children were ages 12 and 9 at the time of the dissolution judgment. They were ages 18 and 15 at the time of the modification judgment. A substantial and continuing change may be shown as a result of increased living expenses "which occur with the growth and maturing of children." *Selby v. Smith*, 193 S.W.3d 819, 825 (Mo.App.2006). *See also Eaton*, 127 S.W.3d at 697.

There was evidence that the children's extracurricular activities had increased due to their ages. Expenses were incurred for school trips, prom dances, books, camps, and special projects. Mother stated that her grocery bill had increased. She explained that the parties' son was now "six-foot-three and he eats more food than you can imagine." Mother further testified that the children's grooming costs were greater now than at the time of the dissolution of marriage. Both children were in band. The parties' daughter played tennis competitively and was a member of the school tennis team.

Change in financial circumstances may, likewise, be evidence of a substantial and continuing change in circumstances. *Eaton, supra*. Prior to the dissolution of the parties' marriage, they were owners of General Pet, Inc., (General Pet) and Pet Warehouse, Inc. (Pet Warehouse). Father is now sole owner of those companies. The separation agreement the parties reached at the time of the dissolution of their marriage included the agreement that mother would work for General Pet at an annual salary of $65,000. Mother had been fired from that position at the time of the dissolution of marriage.

Father receives a salary of $130,000 per year from the companies. He also receives an annual bonus. The companies' retained earnings increased from $1,767,209 to $3,479,245 since the dissolution of the marriage. There was evidence that father's practice is to take loans from

one or more of the corporations. Company accounting records revealed that "loans to shareholders" increased from $735,000 shortly after the dissolution to $1,397,000 just prior to the modification judgment. Father is the sole shareholder.

The accountant for the corporations testified that father would borrow money for "various things" throughout the year and "then at year-end, he'll take a bonus and he takes the net check and just puts it back in the company to pay back on his borrowings during the year." Father received wages of $627,869 from General Pet for the tax year July 1, 2003, to June 30, 2004.

Mother offered evidence that during the 54–month period from January 1999, following the dissolution of marriage, until June 2003, father received an average monthly gross income of $45,458.83. This amount was calculated by including deposits from father's personal bank statements designated as "loans" from General Pet, adding those deposits to father's salary, and averaging the total amount over that period of time. The motion court found as follows.

> The Court finds that [mother's] calculation of [father's] monthly gross income is persuasive and the explanation and analysis of the derivation of [father's] monthly gross income is support[ed] by substantial evidence and the Court finds that [father's] monthly gross income for purposes of calculating child support should be $45,459.00. The income and benefits derive [sic] from General Pet, Inc., the Court considers is income for purposes of computing this child support as it is a substantial financial benefit that is available to [father] that does have a positive impact on his ability to support his children. The Court adopts [mother's] exhibit "3A["] and finds the

presumed amount of support is $6,035 for two children.

The motion court found there was no evidence to rebut the presumptive child support amount. Point III is denied in that, notwithstanding the motion court's erroneous reference to the 20% increase in presumed child support, there was sufficient evidence of changed circumstances so substantial and continuing as to warrant the modification of child support.

Point I contends the motion court erred in modifying child support based on its Form 14 calculation of presumed child support "in that the calculation overstated [father's] income as shown by the evidence." Arguably, Point I does not comply with requirements of Rule 84.04(d) that a point relied on explain in summary fashion why, in the context of the case, the legal reasons father relies on support his claim that the motion court erred in modifying the amount of child support he must pay. *See* Rule 84.04(d)(1)(C). Point I does not state in what respect the evidence demonstrates the motion court overstated father's income.

 Albeit that deficient points relied on do not preserve issues for appellate review, *Murphy v. Aetna Cas. & Sur. Co.*, 955 S.W.2d 949, 951 (Mo.App.1997), appellate courts generally do not exercise discretion to disregard a defective point unless the defective point impedes disposition of the case on the merits. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo.banc 1997). "A brief impedes disposition on the merits if it fails to give notice to the other parties and to the appellate court of the basis for the claimed error." *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App.2001). Mother has not claimed inability to discern the basis for father's claim of error nor, upon a review of father's argument in support of Point I, does this court conclude it is unable to identify the basis for that

claim. The error asserted by Point I is, therefore considered on the merits.

In his argument in support of Point I, Father again complains that the trial court improperly stated a change in presumed child support of more than 20% as a basis for modification. That issue has been addressed, *supra*, in this court's review of Point III. Further discussion is not necessary. As this court perceives father's argument in support of Point I, he contends the motion court's calculation of his average monthly income as $45,459 was unwarranted by the evidence. Father does not disagree with the amounts that were derived from loans he granted himself as sole owner of his companies. Rather, he complains that he had legitimate business reasons for the loans; that they included the purchase of real estate for future development of his business and purchase of stock in a company with which he contemplated developing a future business relationship. Father complains that should he undertake future withdrawals of funds in the nature of those done in the past, possible tax consequences could result.

Father's argument is, in large part, a *non sequitur*. He chose the manner in which he withdrew funds from his businesses and the amounts he withdrew, as well as the use to which he, personally, applied those funds. They were financial resources from which he personally benefited. Significant employment related benefits received by a parent may be included as income in determining the parent's gross income for calculating the amount of presumed child support. *Buckner v. Jordan*, 952 S.W.2d 710, 711–12 (Mo.banc 1997). Determination whether to include significant employment related benefits in calculating presumed child support is within the trial court's discretion. *Wilson v. Whitney*, 81 S.W.3d 172, 181

(Mo.App.2002). Retained earnings or loans from corporations to sole shareholders may be considered part of the shareholder's gross income as well. *Boudreau v. Benitz*, 827 S.W.2d 732, 734 (Mo.App. 1992). It was permissible for the motion court to include funds father chose to withdraw in the form of loans, together with his designated salary, as gross income in calculating presumed child support. Father's argument that the trial court overstated his income for purposes of calculating presumed child support is without merit. Point I is denied.

### Child Custody

The motion court modified the child custody that was granted by the dissolution judgment. It awarded mother sole legal and physical custody of both children and found it was in the son, Kent's, best interests that he have no contact with father.

Section 452.400.1(1) provides, "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." The findings the motion court adopted include:

The Court finds that [father] has sexually abused JMK and the Court specially finds from the evidence that contact between JMK and her father will endanger her physical health and impair her emotional development. Although there is no evidence to indicate that [father] has abused KWK, however, this Court must consider the conduct of the father who may inspire KWK by words or example of how he would teach this young boy about relationships with women. In the words of Dr. Aram, "contact implies parenting influence". This Court has no assurance that KWK is free from physical harm or emotion [sic] development

impairment. Consequently, the Court finds that no contact from the father with either child serves the best interest of both of them and is the only way to protect either or both of them from further harm.[ 3]

The parenting plan the motion court adopted as part of the modification provides:

> FATHER'S CONTACT. The Court finds it is not in the best interest of the children to have contact with [father] at this time, and further finds that Father presently constitutes an endangerment to the children's physical health and their emotional development. Father should have no contact with the children until further order of the Court pursuant to the provisions of 452.400 RSMo.

■ Father's Point II argues that the motion court erred in modifying custody with respect to Kent Keller by eliminating father's contact with Kent. Point II contends that "the evidence did not demonstrate that contact with [father] would endanger the child Kent Keller's physical health or impair his emotional development in that the evidence disclosed only a personal opinion of a psychologist that [father] would not teach Kent to treat women with respect, and the opinion testimony of one investigator whose opinion was not shown to be competent, the specific finding being that [father] 'may inspire Kent W. Keller by words or example how he would teach this young boy about relationships with women' and the 'lack of assurance that Kent W. Keller is free from physical harm or emotional development and impairment.' "

The motion court heard evidence that father had sexually abused his daughter,

Jennifer, at ages 2 and 3 and again at age 10. Jennifer testified that father had threatened harm to her, to mother, and to her brother, Kent, if Jennifer told anyone about the abuse. Four other witnesses testified that father had sexually abused them as children. At the time of the hearing, father was in his mid-sixties. Some of the testimony of sexual abuse by father related to occurrences as early as thirty years prior to the date of the hearing.

There had been a hotline report that father had sexually abused Jennifer. The social worker assigned to investigate the call was Heather Ford. Ms. Ford found probable cause that the abuse had occurred. Her opinion was that it would be inappropriate for either child to have unsupervised visitation with father. There was no evidence that father had sexually abused Kent. Ms. Ford nevertheless recommended that "[b]ecause [father] has a strong history of alleged sexual abuse against multiple children," unsupervised visitation would be inappropriate "unless adequate measures could be taken to assure Kent's safety."

The motion court appointed a licensed clinical psychologist, Dr. Alan Aram, to evaluate mother and father. Dr. Aram expressed "grave concerns" regarding Kent's emotional and psychological well-being if placed in father's physical custody. He stated he would have concerns about placing any child in the custody of a child molester.

Criminal charges against father were filed in August 2001 alleging child molestation and statutory sodomy. The criminal charges were pending at the time of the modification hearing. Father had posted a bail bond in the criminal case. A condition

---

3. The quoted text was italicized in the motion court's findings. The italics have been omitted.

of father's bond was that he have no contact with children under the age of 17, including his son, Kent. The guardian ad litem recommended that future contact between Kent and father be contingent on completion of the criminal proceedings against father, completion of any sentence that might be imposed if father were convicted, and participation in and completion of the Missouri Sex Offender Program. He suggested that "supervised contact in a therapeutic session might be appropriate" upon completion of the contingencies he outlined, but only if recommended by appropriate psychologists or counselors involved with the parties at that time.

Mindful of the deference accorded trial judges in assessing the credibility of witnesses, *Reese, supra,* the evidence was sufficient for the motion court to find it was not in the best interests of Kent to have contact with father. Point III is denied.

### Attorney Fees

The motion court adopted the recommendations of the commissioner as follows.

The Court notes from the pleadings of [mother's] First Amended Motion to Modify that Count I in paragraph 7, pleads and requests the Court to award her attorney fees. In Count III of the First Amended Motion to Modify in paragraph 7, [mother] has requested future attorney fees, Guardian ad Litem fees, costs and expert fees. [Father] filed his answer and denied paragraph 7, of Count I and paragraph 7, of Count III. Therefore, attorney fees were an issue before the Court. The Court can find no evidence that [father] conducted any pre-trial discovery on the issue of attorney fees that was pleaded by [mother]. During the trial, however, [father] objected to the submission of an attorney fee summary stating that his due process rights would be denied be-

cause he was deprived of the right to cross examine [mother's] attorney in respect to the fees. The Court requested that the attorney fee request and back-up documents be submitted to the Court in camera for review and the Court has received Petitioner's Exhibit 87A, the summary, Exhibit B, the backup documents, Exhibit's [sic] C and D, supplements to 87B. The Court has examined all of the exhibits in camera and in the Court's discretion it does not find that the request for attorney fees contains any excessive, redundant, or otherwise unnecessary charges. The Court does find that not all of the billing is privileged such as the identity of the client, the amount of the fee and the payment by the case file number and the general purpose of the work. Those items are not protected. The Court therefore finds that Exhibit's [sic] 87A and 87B are not privileged. However, the Court does find that 87D definitely contains trial strategy information and is found to be privileged. The fees that are set out, however, in 87D are found to be reasonable in the amount of $11,736.00. The total amount of attorney fees requested by [mother] is $68,916.49. The Court does find that [mother] has paid approximately 25% of the total billing, that is $17,251.70 leaving a balance of $51,664.79. The Court in considering the resources of the parties and the merits of the case and the actions of the parties during the pendency of this case, the Court finds it reasonable for [father] to pay the balance of the attorney fees in the amount of $51,664.79. The Court notes from the docket sheet that there are a total of thirty-eight (38) motions to compel and the follow up motions for sanctions. Thirty-seven (37) of those entries are filed by [mother] and the Guardian ad Litem against [father]. One motion to compel was filed by [fa-

ther], but was resolved without a court appearance by agreement. Under these circumstances alone the Court finds that [father] paying 75% of the total of the attorney fees is reasonable.

The motion court ordered father to pay attorney fees in the amount of $51,664.79. Judgment was entered in favor of mother's attorneys, against father, for that amount.

■ Point IV argues that the motion court erred in awarding mother attorney fees "based upon the court's consideration of *ex parte* communication from [mother's] attorney in the form of exhibits submitted to the court over objection without the opportunity for cross-examination or even seeing the content of the documents"; that father was denied a fair hearing and, thus, due process of law.

■ The trial court is expert on attorney fees and may award attorney fees as a matter of law. *State ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 835 (Mo.App.1995). The fact that mother's attorneys had records that related to an appropriate amount of attorney fees which the trial court reviewed absent their revelation to father's attorney is of no consequence in that the trial court determined they included privileged information. Information relevant to attorney fees does not require waiver of attorney-client privilege. *Id.* at 837. "[T]he judge who personally tries a case and is acquainted with all the issues involved is in a position to fix the amount of attorneys' fees without the aid of evidence." *Agnew v. Johnson,* 352 Mo. 222, 176 S.W.2d 489, 494 (1943). Point IV is denied.

■ One further matter regarding attorney fees warrants discussion. Mother filed a motion with this court asking for attorney fees related to this appeal. *See* § 452.355.1. Determination of a request for attorney fees in a dissolution action falls

within the authority of the trial court in that the trial court does not lose jurisdiction to rule on such motions even if it withholds ruling until after resolution of an appeal. *Meierer v. Meierer,* 876 S.W.2d 36, 37 (Mo.App.1994). *See also Myers v. Myers,* 586 S.W.2d 797, 799 (Mo.App.1979). The motion for attorney fees on appeal is dismissed without prejudice to pursuing the issues addressed therein in the trial court. The judgment is affirmed.

RAHMEYER, P.J., and SCOTT, J., concur.