Charlotte A. **MELSON**, Respondent,

v.

Mark W. **MELSON**, Appellant.

**No. WD 69863.**

Missouri Court of Appeals, Western District.

June 23, 2009.

Application for Transfer to Supreme Court Denied July 28, 2009.

Application for Transfer Denied Oct. 6, 2009.

Jeremiah Kidwell, Esq., Kansas City, MO, for appellant.

Judity L. Berry, Esq., Independence, MO, for respondent.

Before Division Three: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judge.

LISA WHITE HARDWICK, Judge.

Mark Melson (Father) appeals from a judgment modifying his child support obligation to Charlotte Melson (Mother). He contends the circuit court erred in failing to include the monthly amount of the children's health insurance premiums in its Form 14 calculation. He also appeals the court's orders finding him in contempt. For reasons explained herein, we affirm the modification judgment and dismiss Father's appeal of the contempt orders.

### FACTUAL AND PROCEDURAL HISTORY

The parties' marriage was dissolved on November 1, 1994. The original dissolution judgment was modified on April 13, 1998, and again on May 10, 2006. The May 10, 2006 modification judgment granted the parties joint legal and physical custody of their three children, Ashley, Rachel, and Matthew. Father's address was designated as Ashley's address for educational and mailing purposes, and Mother's address continued to be designated as Rachel's and Matthew's address. After accounting for Mother's support obligation for Ashley, Father was required to pay Mother $1,500 as child support for Rachel and Matthew.

On October 1, 2007, Father filed a motion to modify. In his motion, he alleged that Rachel, who had turned eighteen, had been living with him since June 2007 and had expressed a desire to continue to reside with him. He asked the court to

designate his address as Rachel's, order his child support obligation for Rachel abated since June 2007, and order Mother to pay him child support for Rachel. Mother filed an answer and counter-motion for contempt, alleging that Father had willfully failed to comply with several provisions in the prior judgment.

The circuit court heard evidence on the parties' motions. On May 29, 2008, the court entered its modification judgment. The court found Ashley had turned twenty-one and was emancipated. With regard to Rachel, the court found that Father had demonstrated a change in circumstances, but it was not in Rachel's best interests to modify the custody arrangement. The court ordered Father to pay $1,562 per month in child support for Rachel and Matthew.

The court further found Father in contempt for his deliberate and willful failure to pay his share of uninsured medical expenses, his failure to provide Mother copies of the children's dental records,[1] and his failure to pay 100 percent of Ashley's and Rachel's college expenses. The court ordered Father committed to the Jackson County Department of Corrections. The court stayed execution, however, and directed him to purge the contempt by (1) paying $849.37 in uninsured medical expenses to Mother within thirty days of the judgment; (2) tendering directly to Mother the children's complete dental records within thirty days of the judgment; and (3) paying the entire principal balance and interest owed on Ashley's and Rachel's student loans within ninety days of the judgment.

Father appeals from the modification judgment and the contempt orders.

## STANDARD OF REVIEW

 We will not disturb a judgment modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001). We defer to the circuit court's credibility determinations and view the evidence in the light most favorable to the court's decision. *Id.*

## ANALYSIS

### Child Support

 In Point I, Father contends the circuit court's Form 14 calculation was incorrect because it failed to include the cost of Rachel's and Matthew's health insurance, which is $300 per month. The Form 14 directions for line 6c provide for the entry of "the monthly amount of any premium paid or to be paid or deducted or to be deducted by an employer from gross monthly income for a health insurance policy for the children who are the subject of this proceeding." Father argues that the cost of the children's health insurance was deducted from his gross monthly income and, therefore, must be included in the Form 14 calculation.

On this issue, Father testified that he pays for Rachel's and Matthew's health insurance out of the business account of his dental practice, Rayview Dental Group, L.L.C. Father also pays for his employees' health insurance out of the same business account. In past years, Father separated his employees' health insurance expense from his family's health insurance expense on his tax return. While he deducted the cost of his employees' health insurance as a business expense, which reduced his business's net profit, he treated the cost of his family's health insurance as a self-

---

1. Father is a dentist and provides the children's dental care.

employed health insurance deduction, which reduced his gross income.

On his most recent tax return, however, Father did not take a self-employed health insurance deduction. All of the health insurance expenses were deducted as a business expense. Because Father's testimony was inconsistent as to whether he currently treated the cost of the children's health insurance as a business expense and his most recent tax return indicated that he did, the court concluded that Father failed to show by reliable evidence that he, and not his business, paid for Rachel's and Matthew's health insurance.

Father argues that, regardless of whether the children's health insurance was paid as a business expense from his dental practice or by him individually, the end result was the same: the cost was deducted from his gross income. We disagree. Father's argument fails to distinguish between his business's gross receipts and his gross income. Father is self-employed, so his gross income is his business's "gross receipts minus the ordinary and necessary expenses incurred to produce such receipts." Directions, Comments for Use, and Examples for Completion of Form No. 14, Line 1: Gross Income. Because Father treated the cost of the children's health insurance as a business expense, it was deducted, along with the business's ordinary and necessary expenses, from the business's gross receipts in calculating the business's net profit.

While Father is correct that his treating the cost of the children's health insurance as a business expense ultimately resulted in a *reduction* of his gross income because the business's net profit was his gross income for Form 14 purposes, the actual *deduction* was from the business's gross receipts, not his gross income. The plain language of the Form 14 directions allows the entry on line 6c of health insurance costs that are *"deducted by an employer from gross monthly income [.]"* (Emphasis added.) Furthermore, Father received credit on the Form 14 for having paid the cost of the children's health insurance because his gross monthly income on line 1 was reduced by that amount. To allow him to take another credit on line 6c for the same amount would essentially permit him to "double dip."[2] The circuit court did not err in disallowing the cost of Rachel's and Matthew's health insurance on line 6c of the court's Form 14. Point I is denied.

### Contempt Orders

In Points II and III, Father appeals the circuit court's orders finding him in contempt for failing to give copies of the children's dental records to Mother and failing to pay 100 percent of Ashley's and Rachel's college expenses. In his jurisdictional statement, Father concedes that the contempt orders he challenges may not be appealable. Mother agrees and urges us to dismiss Father's appeal of Points II and III.

A civil contempt order is not final for purposes of appeal until it is enforced. *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 781 (Mo. banc 2003). When the remedy of a contempt order is imprisonment, as it is here, the contempt order is not enforced until there is " 'actual incarceration pursuant to a warrant [or

---

**2.** Had Father not treated the cost of the children's health insurance as a business expense but instead taken the self-employed health insurance deduction as he had done in the past, that deduction would have been from his gross income, not his business's gross receipts. In that situation, the amount listed on line 1 as his gross monthly income would not reflect a reduction for the cost of the children's health insurance. Thus, including that cost on line 6c of Form 14 would be appropriate.

order] of commitment.'" *Id.* (citation omitted). In *Crow,* the order of incarceration was conditioned upon the contemnor's failure to purge the contempt within sixty days. *Id.* at 782. If he failed to do so, the court could impose incarceration by issuing an order of commitment. *Id.* The contemnor failed to purge the contempt, but an order of commitment never issued. *Id.* The Supreme Court ruled that, "[u]ntil incarceration is ordered, the contempt order is not 'enforced' and remains interlocutory and unappealable." *Id.* The Court dismissed the point on appeal concerning the contempt order. *Id.*

Similarly, in *Eaton v. Bell,* 127 S.W.3d 690, 694 (Mo.App.2004), the circuit court sustained a motion for contempt and ordered the contemnor to pay past due maintenance and child support. The court committed the contemnor to the county jail until the past due amount was paid in full. *Id.* The court stayed execution of the commitment, however, and allowed the contemnor to purge the contempt by making monthly payments on the delinquency. *Id.* On appeal, this court found that the circuit court's staying the warrant of commitment effectively negated the warrant of commitment. *Id.* at 698. Because of the stay, the contemnor was not subject to imminent incarceration, the contempt order "remained a mere coercive threat," and, therefore, the order was not a final, appealable judgment. *Id.*

In both of the contempt orders from which Father appeals, the court ordered Father committed to the Jackson County Department of Corrections, but stayed execution and allowed him time to purge the contempt. To date, the circuit court has not taken evidence to determine whether

Father has purged the contempt. Because of the stay, Father is not subject to imminent incarceration. The contempt orders are not final, appealable judgments.[3] Points II and III are dismissed.

### CONCLUSION

We affirm the modification judgment and dismiss the appeal of the contempt orders.

All Concur.

---

**3.** The lack of finality of the contempt orders does not affect the appealability of the modification judgment, because the contempt and modification are considered separate for purposes of appeal. *See Crow,* 103 S.W.3d at 783. *See also Cohen v. Cohen,* 178 S.W.3d 656 (Mo.App.2005), and *Eaton,* 127 S.W.3d 690.