Kim M. EMMONS (n/k/a Kim M. Webb), Respondent,

v.

**Kyle D. EMMONS, Appellant.**

**No. WD 71137.**

Missouri Court of Appeals, Western District.

April 6, 2010.

---

4. We deny Glick's motion to dismiss for failure to file a timely notice of appeal.

Brian Sleeth, Columbia, MO, for respondent.

Stephen S. Wyse, Columbia, MO, for appellant.

Before Division Four: THOMAS H. NEWTON, Chief Judge, Presiding, JAMES M. SMART, JR., Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Kyle Emmons ("Father") appeals from the trial court's April 9, 2009 judgment finding him in contempt of court following Kim Emmons's ("Mother") motion which alleged that Father was not compliant with the terms of the judgment of dissolution and a subsequent modification of the judgment entered pursuant to a settlement agreement. Father asserts eight points on appeal. Father claims that the trial court erred in: (1) finding the obligation imposed on him to pay college costs in the original decree enforceable, (2) finding that he is obligated to pay college costs for his daughter, (3) finding that an earlier settlement agreement between the parties did not modify his obligation to pay college costs for his daughter, (4) finding that his son provided Father with timely notice each semester that he attended college, (5) denying his motion to abate child support because daughter failed to provide timely notice of college attendance, (6) denying his motion for emancipation of his daughter due to her failure to provide timely notice of college attendance, (7) finding that he owed $10,060 for his daughter's college costs due his claim that there was a lack of evidence of credible and sufficient accounting, and (8) awarding Mother attorney's fees. Father's appeal of the trial court's April 9, 2009 contempt judgment as reflected in Father's points one through seven is dismissed. Father's point eight is denied, and the trial court's award of attorney's fees is affirmed.

## Factual and Procedural History

■ The parties' marriage was dissolved on May 19, 1999. The judgment of dissolution ("Judgment") included a detailed parenting plan concerning the couple's two children, a son and a daughter. Pursuant to that plan, the parties share joint legal custody with Mother being the primary physical custodian of the children.[1] Father is to pay child support. The plan also provides that Father will pay the reasonable costs of the children's college education. On October 19, 2006, the trial court entered a second judgment ("Modified Judgment") adjusting some of Father's child support and college tuition obligations relating to the parties' son pursuant to a settlement agreement entered into to dispose Mother's first motion for contempt.[2]

On November 18, 2008, Mother filed a first amended motion for contempt ("Contempt Motion") alleging that Father had willfully failed and refused to comply with the Judgment and the Modified Judgment of the trial court in that Father had failed and refused to pay Mother child support and college tuition. Father filed two pleadings in response to Mother's Contempt Motion. Father filed one pleading that he titled "Answer." Father's other

1. We refer to the language of the parties' Marriage Settlement and Separation Agreement that was incorporated into the Judgment. We note that legal custody may be either "joint" or "sole." Section 452.375.1(1). Designation of physical custody as "primary" is erroneous. *Malawey v. Malawey,* 137 S.W.3d 518, 525 (Mo.App. E.D. 2004).

2. The settlement agreement primarily addressed son's emancipation and the resulting modification of the child support amount. Mother's first motion for contempt was not included in the record on appeal.

pleading was titled "Motion for Emancipation or, in the Alternative, Motion to Abate Child Support" ("Motion"). The trial court heard evidence on the parties' motions, then entered its April 9, 2009 Judgment and Order Finding Respondent in Contempt and Order and Warrant of Commitment ("Contempt Judgment"). The Contempt Judgment found Father in contempt and denied Father's Motion. The Contempt Judgment stated that Father could purge his contempt by paying the unpaid amount determined to be owed to Mother for child support and college expenses. The warrant of commitment was stayed until July 2, 2009. Nothing in the record indicates what, if anything, occurred on or after July 2, 2009, with respect to the warrant of commitment.

On December 16, 2009, the trial court executed a garnishment order against Father in the amount of $18,955.19 to enforce the payment obligations set out in the trial court's Contempt Judgment. This information is contained in an exhibit submitted to this court by Father, though the exhibit is not a part of the legal file. The record and Father's exhibit fail to reveal whether Mother has received any payments as a result of the garnishment.

Father filed his notice of appeal from the April 9, 2009 Contempt Judgment on June 8, 2009.

### Analysis

#### Contempt Judgment

 Points one, two, three, four, and seven of Father's appeal contest various findings made by the trial court in the Contempt Judgment.[3] Preliminarily, we address whether the Contempt Judgment is appealable. "A civil contempt order is appealable; but, like other judgments, it must be final before it may be appealed." *Eaton v. Bell*, 127 S.W.3d 690, 697 (Mo. App. W.D.2004). "The purpose of a civil contempt order is to compel compliance with the relief granted...." *Jones v. Jones*, 296 S.W.3d 526, 528 (Mo.App. W.D. 2009). A party held in civil contempt has two options: (1) purge himself of the contempt by complying with the trial court's order, making the case moot and unappealable; or (2) appeal the order, *but only after the trial court's order is enforced by incarceration or otherwise*. *Lieurance v. Lieurance*, 111 S.W.3d 445, 446 (Mo.App. E.D.2003).

 Thus, a civil contempt order is not final and appealable until it is enforced. *Melson v. Melson*, 292 S.W.3d 375, 378 (Mo.App. W.D.2009). There is no right to appeal from an order of civil contempt before it has been enforced. *Lieurance*, 111 S.W.3d at 446. Enforcement of a contempt order can take the form of imprisonment or the imposition of a fine. *Id.* The form of enforcement dictates when the contempt order is deemed enforced, and thus when the contempt order becomes final and appealable. *Eaton*, 127 S.W.3d at 697.

 If the enforcement remedy used is imprisonment, the contempt order is not deemed "enforced" until there is *actual incarceration* pursuant to an order or warrant of commitment. *Id.* (citing *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003)). Once actual incarceration has occurred, a contemnor is entitled to release on bail pending appeal. *Jones*, 296 S.W.3d at 529. "[T]he issuance of an order of commitment is [also] suffi-

---

**3.** Points five and six of Father's appeal also contest findings in the Contempt Judgment, but relate specifically to Father's Motion. Because Father argues the denial of his Motion created an independent basis for appeal, we address points five and six separately later in this Opinion.

cient to enforce a contempt order." *Eaton,* 127 S.W.3d at 698 (citing *In re Marriage of Crow,* 103 S.W.3d at 781–82). Until the issuance of a warrant of commitment or actual incarceration, however, the contempt order remains interlocutory and unappealable. *Id.*

■ In this case, a warrant of commitment was issued in the Contempt Judgment. However, the warrant of commitment was stayed. In *Eaton,* this court addressed a very similar situation. The trial court sustained a motion for contempt and ordered the contemnor to pay past amounts due. *Id.* at 694. The trial court committed the contemnor to the county jail, *but stayed execution* of the commitment and allowed the contemnor to purge the contempt by making monthly payments. *Id.* We found that staying the execution of the warrant of commitment effectively negated the warrant of commitment. *Id.* at 698. Because of the stay, the contemnor was not subject to imminent incarceration, and the contempt order "remained a mere coercive threat." *Id.* Thus, the contempt order had not been enforced and was not a final, appealable judgment. *Id.*

We reached a similar conclusion in *Melson,* 292 S.W.3d at 377, where an order of commitment was issued but execution was stayed to give Father an opportunity to purge contempt. Though the ninety day term of the stay had expired, the trial court had "not taken evidence to determine whether Father ha[d] purged the contempt." *Id.* at 379. Thus, we concluded that Father was "not subject to imminent incarceration." *Id.* As a result, the contempt order was not a final, appealable judgment. *Id.*

Father relies on *In re Marriage of Crow,* where the Supreme Court held that a contempt order was interlocutory and unappealable because the contempt order conditioned incarceration on husband's failure to purge the contempt. 103 S.W.3d at 780. Though the husband failed to purge, incarceration was never imposed. *Id.* at 782. Father attempts to draw a meaningful distinction between his case and *In re Marriage of Crow,* arguing that because his commitment order was not conditioned on his failure to purge, but was instead stayed, the warrant of commitment automatically reverted to an issued warrant of commitment on July 2, 2009. We disagree. Such a conclusion would be contrary to our holdings in *Eaton* and *Melson.* There is no practical difference between a stayed and a conditioned warrant of commitment. In either case, the warrant of commitment is essentially negated and presents no imminent threat of incarceration. Unless the contemnor is actually incarcerated on the stayed or conditioned warrant of commitment, or unless the trial court takes evidence to determine whether contempt has been purged and then reissues a warrant of commitment, no "enforcement" has occurred sufficient to render the contempt order final and appealable.

■ In his reply brief, Father notes that a garnishment order has been issued on behalf of Mother. Father apparently believes the issuance of the garnishment order is evidence that the contempt order is final and appealable. To the contrary, the garnishment order indicates Father is in the process of purging the contempt. In *Lieurance,* husband was found in contempt for failing to make maintenance payments to wife. 111 S.W.3d at 446. The trial court found the contempt order was moot because husband's social security benefits had been garnished, resulting in monthly payments to wife. *Id.* The Eastern District held that because the trial court found the contempt order moot, it was not appealable. *Id.* In dismissing the

appeal, the Eastern District also held that "even if Husband was not fully purged of the contempt, his appeal of this order is premature and not final for purposes of appeal *because the enforcement of the contempt order has not been sought by way of incarceration or otherwise.*" *Id.* (emphasis added). Similarly, in this case, the garnishment either renders the Contempt Judgment moot and no longer subject to appeal or leaves unaltered the fact that the Contempt Judgment is not final and appealable as it has not been enforced.[4]

■■■ Like the contempt orders in *Eaton* and *Melson,* the Contempt Judgment issued a warrant of commitment but stayed the warrant of commitment until July 2, 2009, permitting Father an opportunity to purge his contempt. The stay negated the warrant of commitment. Though July 2, 2009, has clearly passed, the record does not reflect whether the trial court has taken any evidence to determine if Father has purged the contempt. The record does not reflect that a new warrant of commitment has been issued. The record does not reflect that Father has been actually incarcerated as a result of the expiration of the stay of the warrant of commitment. Pursuant to Rule 81.12(c), Father is required to prepare and provide this court with an adequate legal file and record on appeal. "We cannot act as an advocate for the appellant by supplying his argument. 'An argument should show how the principles of law and the facts of the case interact.' And, the failure to develop an argument results in our treating the appellant's point as abandoned." *Boyd v. Boyd,* 134 S.W.3d 820, 824 (Mo.App. W.D.2004) (citation omitted). We will not speculate on the facts and arguments that were not asserted. *State ex rel. Morgan v. Okoye,* 141 S.W.3d 410, 411 (Mo.App. W.D.2004). We necessarily conclude that Father has not demonstrated that he is subject to imminent incarceration. Therefore, Father has not demonstrated that the Contempt Judgment has been enforced. The contempt order is not a final, appealable judgment. Father's appeal points one, two, three, four, and seven are dismissed.[5]

## Father's Motion

■■■ In points five and six of his appeal, Father contends the trial court erred in denying his Motion. Father contends that even if the Contempt Judgment is unappealable, the trial court's denial of Father's Motion, where Father sought to abate child support for his daughter and to declare his daughter emancipated, is a final and appealable judgment. We disagree.

■■■ Mother's motion for contempt alleges that Father should be found in contempt for his failure to pay child support and college tuition as required by the Judgment and the Modified Judgment. This related to child support and college

---

4. Collection efforts to enforce payment obligations set forth in a contempt order are not "enforcement" mechanisms designed to coerce performance of the contempt order. The only monetary enforcement mechanism designed to coerce performance of a contempt order is a fine. When the remedy of enforcement of a contempt order is a fine, "the contempt order is 'enforced' when the moving party executes on the fine." *In re Marriage of Crow,* 103 S.W.3d at 781. Execution efforts to enforce a coercive fine are distinguishable, however, from execution efforts to enforce the underlying payment obligation giving rise to the contempt order.

5. Interestingly, though Father claims on appeal that the Contempt Judgment became final and appealable on July 2, 2009, when the stay of the warrant of commitment expired, Father filed his notice of appeal on June 8, 2009.

tuition owed for the parties' daughter. In response, Father filed a pleading denominated "Answer" denying most of Mother's allegations. Father also filed the Motion. The Motion contends, in paragraphs enumerated one through nine, that Father does not owe college tuition for his daughter because he did not timely receive the notice of her school attendance required by section 452.340.5.[6] Father then prays in paragraph 10 of his Motion that the court find his daughter emancipated and for an abatement of support already paid by him for his daughter since January 12, 2009, on the theory that the daughter's purported failure to document her status as a full time student would have resulted in his child support obligation ending as of that time. " 'The legal character of a pleading is determined by its subject matter and not its designation to the extent that the courts ignore the denomination of a pleading and look to its substance to determine its nature.' " *Gunter v. City of James*, 189 S.W.3d 667, 677 (Mo.App. S.D. 2006) (citation omitted). Father's assertions in the Motion are directly responsive to, and appear intended to contest, Mother's motion for contempt. We conclude that notwithstanding the "title" of Father's pleading, Father's Motion is not an independent motion from which direct appeal is permitted.

Father relies on *In re Marriage of Crow*, where the Supreme Court held that motions for contempt and to modify are independent from one another and, thus, separate for purposes of appeal. 103 S.W.3d at 783. The present case is distinguishable. Father's Motion does not seek to modify the Judgment or the Modified Judgment. Rather, Father's Motion attempts to defend his acknowledged failure to pay court ordered child support and college tuition—and thus to defend the subject matter of Mother's motion for contempt. The Contempt Judgment makes findings in Mother's favor and contrary to the arguments advanced in the Motion, consistent with the fact that the Motion amounted to no more that a defense of the motion for contempt. Denial of Father's Motion did not, therefore, result in a separate, final, appealable order.

■ Even if we were to review Father's Motion on the merits, Father would not prevail. The trial court's denial of the Motion would be reviewed under the standard of review applicable to any other court-tried case. *Peine v. Peine*, 200 S.W.3d 567, 571 (Mo.App. W.D.2006). "The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Although Father testified at the hearing that he did not receive timely notice from daughter regarding her college attendance, Mother's testimony refuted his claim. Mother testified that she always timely provided the required notice documentation to Father by sending it to him or his attorney of record. She further testified that it had been Father's pattern to claim that he had not received the notices. Mother testified that initially she would request that the school send the information directly to Father, but Father would claim he did not receive it. Then, Mother would get an official copy from the school and mail it to Father, and Father would still deny receiving it. This resulted in Mother using certified mail so that there would be a record of his receipt.

■ "The trial court is free to disbelieve all, part or none of the testimony of

6. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

any witness." *In the Interest of C.C.*, 32 S.W.3d 824, 829 (Mo.App. W.D.2000). The trial court was free to disbelieve Father's assertion that he did not receive the required notices until they were sent to him by Mother via certified mail. As a result, the trial court's denial of Father's Motion is not against the weight of the evidence.

Father's Motion is not independently appealable. Thus Father's points five and six address matters that are simply findings contained within the Contempt Judgment. We have already determined that the Contempt Judgment is not a final, appealable order. Father's appeal points five and six are dismissed.

### Attorney's Fees

█ In point eight, Father challenges the trial court's award of attorney's fees to Mother. Father does not generally contest the trial court's authority to award attorney's fees as a part of the Contempt Judgment. Rather, Father claims the evidence did not support the award, as Mother had not yet paid her attorney and, according to Father, had no intention of doing so.

█ Father again cites *In re Marriage of Crow* to argue that an attorney's fees award in a contempt order is independently appealable. *In re Marriage of Crow* does, indeed, hold that though an award of attorney's fees in a civil contempt proceeding is within the court's discretion, the award is "not a portion of the civil contempt order itself which is to solely coerce compliance." 103 S.W.3d at 782–83. As such, the attorney's fee award is independently appealable. We will thus address the merits of Father's point eight.

We note initially that Father's point eight is wholly deficient under Rule 84.04 in that it fails to explain any legal reason for Father's claim of reversible error and fails to include a statement of the standard of review in the argument portion of the brief.[7] Though not obliged to do so, we will elect, *ex gratia*, to address the merits of Father's point eight.

█ The trial court had the authority to award Mother attorney's fees in this matter pursuant to section 452.355.1. The trial court also had the inherent power to award " 'attorney's fees in civil contempt cases for willful disobedience of a court order.' " *Bruns v. Bruns*, 186 S.W.3d 449, 453 (Mo.App. W.D.2006) (quoting *McNeill v. McNeill*, 708 S.W.2d 751, 754 (Mo.App. E.D.1986)). "A trial court's award of attorney's fees in a civil contempt action will be reversed only when the trial court has abused its discretion." *Id.* (citing *Yeager v. Yeager*, 622 S.W.2d 339, 343 (Mo.App. E.D.1981)).

Though Father claims that Mother had no intention of paying her attorney and that her attorney had no intention of pursuing Mother for payment, the testimony of Mother's attorney does not support Father's contention. Mother's attorney testified that though Mother had not yet paid him, he was not providing his services pro bono. Father offers no authority for the proposition that a trial court abuses its discretion in awarding attorney's fees where the fees have not yet been paid, or even where there is an indication that the fees, if not ordered to be paid by the contemnor, will not be collected from the other party. If attorney's fees are otherwise awardable, the only meaningful inquiry is whether the amount of attorney's fees

---

7. We note that all of Father's points relied on violate Rule 84.04 by failing to include a list of authorities after each point relied on. Many of the points relied on violate Rule 84.04 by failing to explain the legal basis for the claimed error.

awarded is reasonable—a matter Father does not contest.

The trial court did not abuse its discretion. Point eight is denied.

## Conclusion

Father's appeal of the Contempt Judgment is dismissed as the Contempt Judgment is not a final, appealable order. Father's appeal of the award of attorney's fees, which is included within the Contempt Judgment, but which is nonetheless independently appealable, is denied. The trial court's judgment awarding attorney's fees is affirmed.

All concur.