

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| RELAXATION, INC., | ) | |
| | ) | |
| **Respondent,** | ) | WD76792 |
| | ) | |
| v. | ) | OPINION FILED: January 20, 2015 |
| | ) | |
| RIS, INC., | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Miller County, Missouri
The Honorable William R. Hass, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

This action arises from a dispute over rights in a parking lot easement that is

shared between Appellant RIS, Inc. ("RIS"), and Respondent Relaxation, Inc.

("Relaxation"). RIS appeals from a Judgment and Third Order of Contempt in the Circuit

Court of Miller County. Because we do not have jurisdiction, the appeal is dismissed.

### Factual and Procedural History[1]

In 1983, a Parking Lot Dedication ("Dedication" or "easement") was formed

between the predecessors in interest of the parties and was recorded in Miller County.

---

[1]Because this was a judge-tried case, we view the evidence and findings in the light most favorable to the
trial court's judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The basic facts are not in dispute,
and our factual recitation is based in large part on written trial court rulings.

RIS owns property that is adjacent to property owned by Relaxation. Both parties' tracts are commercial. Pursuant to the Dedication, the parties dedicated the two common parking lots between their properties for use as common customer parking. There are various restrictions about the maintenance and the usage of the lots, including a requirement that an existing twenty-five foot wide driveway shall always remain open.

In 1997, an amendment to the Dedication ("Amendment") was executed and recorded in the county. It states that the lots were to be used solely for ingress and egress and for parking by customers, employees, and invitees of the businesses operating from a building that has at least seventy-five percent of its frontage abutting the common customer parking lots. The Amendment additionally placed numerous restrictions on the lots regarding the storage of any vehicles, fixtures, and any other property.

RIS, with Gary Prewitt ("Prewitt") as the principal, began construction on a new shopping center on its property on or around July 2011. The development includes several "big box" stores as future tenants, including Menard's, Kohl's, and CVS. As part of its construction, RIS altered or destroyed portions of the two parking areas, barricaded and restricted access to portions of the parking areas, stored construction vehicles, supplies, and other equipment on the areas, destroyed or altered the existing driveway, and ran power lines and other utilities across the areas without Relaxation's permission.

Michael Craig ("Craig") is a principal of Relaxation.[2] Craig discovered the excavation in August 2011 and contacted an attorney who tried to enter into an agreement

---

[2]Craig had been a principal of Relaxation's predecessor, Water Reflections, and had negotiated the Dedication and Amendment. Per Craig, assuring sufficient parking was the reason for the Dedication and Amendment.

2

with RIS, but that attorney died unexpectedly. Craig hired new counsel, and on October 6, 2011, Relaxation filed a petition against RIS, seeking a temporary restraining order ("TRO"), a preliminary injunction, a permanent injunction, and damages.

From that point on, RIS and Relaxation engaged in extensive litigation. By way of overview, over the next two years, the trial court (at least four separate trial judges have been assigned to this case) issued numerous TROs and contempt orders against RIS, all of which RIS basically ignored. On April 13, 2012, the court issued a preliminary injunction against RIS. Key to this appeal, after the preliminary injunction, the trial court issued two additional orders of contempt against RIS, and then issued two stays.

On October 20, 2011, the trial court, Hon. Stanley Moore, ordered the parties in a docket entry to agree on a location for the common parking area and ordered RIS to open the driveway off of the parking lot and restore the parking area to its agreed dimensions and grade within ten days. The court stated that it would issue a TRO if those conditions were not met.

The next day, Relaxation contacted RIS, stating that a surveyor would mark the corners of the common parking area pursuant to the legal descriptions in the Dedication and stated that if RIS had any disagreement with the boundaries, it should contact Relaxation's counsel. The surveyor marked the corners on the ground that day. RIS did not respond to that letter and took no attempts to restore the common parking area.

Instead, on October 28, 2011, RIS answered the petition, and filed a motion for a change of judge and a motion for reconsideration prior to the issuance of any TRO. *Inter alia*, RIS stated that the relocated entrance could not realistically be moved, that

3

additional parties should be added, including Menard's, Kohl's, and CVS, and that Relaxation should be required to post a bond.[3] RIS requested that the motions be heard on the date of the deadline given for compliance with the October 20, 2011 order. On October 31, 2011, the court took up the case and noted in the docket that "work continues on the driveway across [Relaxation's] parking lot in spite of the above order." The court had visited the construction site twice at RIS's request and noted that it had found that work was continuing on the locations "that both parties agree infringes on parking lot and *concrete is being laid this morning*." (Emphasis added.) The court concluded that it "can entertain absolutely no reason for defendant's contemptuous behavior." The court then sustained the motion for a change of judge, and the cause was reassigned to Judge Donald Barnes.

On November 2, 2011, Relaxation filed a motion for contempt based on the October 20, 2011 order. Relaxation requested that the trial court order RIS to restore the parking area to its prior condition, issue monetary sanctions, and incarcerate the owner, Prewitt, until RIS comes into compliance.

On or about November 22, 2011, the parties appeared before Judge Barnes for another hearing concerning a TRO. The court gave RIS thirty days to resolve an issue with a utility company and with the engineering of a potential road, and the court gave the parties the same thirty days to reach a settlement. The court advised that if there was

---

[3] None of these "additional parties" are parties to the publicly recorded Dedication or the publicly recorded Amendment thereto, nor do they have any current fee interest in the real estate encumbered by or affected by these documents. Because RIS simply ignored the easements when it entered into contracts with these "additional parties," RIS may be subject to contractual damages from these "additional parties" but it does not affect RIS's obligations under the Dedication or Amendment to Relaxation.

4

no settlement, it would enter a TRO and set a bond without further hearing. Additionally, the court ordered RIS not to perform any additional construction work on any property in which Relaxation claims an interest during those thirty days.

Over the next thirty days, however, RIS continued performing construction work on and around the property in which Relaxation claims an interest. The trial court issued a TRO, which was filed with the clerk in Miller County[4] on December 30, 2011.[5] Relaxation posted a $3,500 cash bond per the terms of the order. RIS was served a copy of the TRO. Pursuant to the order, RIS had ninety-six hours to take the following steps: restore the two parking easement areas in the underlying suit, restore the driveway, remove any utility poles, construction materials, or other items or structures that had been placed in the parking easement areas. Many of RIS's complaints in this appeal stem from this December 30, 2011 order.

On or about January 5, 2012, Relaxation filed an amended motion for contempt, moving the court to find RIS in contempt of the December 30, 2011 TRO and asking for daily fines and the incarceration of Prewitt pending compliance. On January 11, 2012, the court issued an "Extended Temporary Restraining Order," in which it extended the TRO issued December 30, 2011. The trial court found that RIS had altered and destroyed portions of the two lots, that Relaxation was likely to succeed on the merits of its claim at trial, that Relaxation lacked an adequate remedy at law, and that there will be irreparable harm to Relaxation unless an order is issued. The court again ordered RIS to restore the

---

[4]Some proceedings were held in Camden County, which is part of the same judicial circuit.
[5]The trial court dated this ruling December 27, 2011, but it was filed December 30, 2011. For ease of reference we will refer to this as the December 30, 2011 order.

parking easement areas to their original grade and dimension or to cover the restored areas with gravel as a temporary solution pending the outcome of the preliminary injunction. The court also ordered RIS to remove utility poles, construction materials, and any other items or structures that RIS had stored in the easement areas. That order was effective for fifteen days. The court requested the parties to work with the court to schedule a hearing on the preliminary injunction. Judge Barnes then recused himself from the case. On January 12, 2012, Judge William Hass was assigned to the case.

On January 26, 2012, February 8, 2012, February 24, 2012, and March 7, 2012, the trial court issued additional extended TROs at Relaxation's request. They were each effective for fifteen days.

On March 9, 2012, Relaxation filed a Second Amended Motion for Contempt based on RIS's failure to comply with the December 30, 2011 order. Among other relief, Relaxation requested daily fines and the incarceration of Prewitt until compliance with the court order. That same day, the court issued a show-cause order, ordering RIS to appear and show cause on March 20, 2012 why an order of contempt should not be entered against it. RIS answered the request for a preliminary injunction and motion for contempt on March 15, 2012. Meanwhile, on March 20, 2012, the trial court issued an additional extended TRO and an additional show-cause order, requiring that RIS appear on March 29, 2012 to show cause as to why an order of contempt should not be issued.

On March 29, 2012, the court held a hearing on the action for a preliminary injunction. Prewitt testified that he did not even bother to read the December 30, 2011 court order and that his company took no steps to comply with it. He also testified that

6

he made no effort between November 9, 2010 and October 2011 to seek condemnation proceedings because he "thought there was no reason for it" and that there would "still be a door open for negotiations." RIS's construction manager, Joe Vernaci ("Vernaci") testified that additional construction work occurred in the disputed areas during the thirty-day moratorium that the trial court imposed on November 22, 2011. RIS additionally constructed a large commercial sign partially within one of the lots just weeks before the March 29, 2012 hearing. According to a surveyor, the two parking areas and the driveway had not been restored, and none of the utility poles, construction materials, or other items or structures placed within the parking areas had been removed. On April 2, 2012, the court issued an additional extended TRO.

On April 13, 2012, the trial court issued a "Findings of Fact, Conclusions of Law, Order of Contempt, and Preliminary Injunction." Again the court held RIS in contempt of the December 30, 2011 TRO. The court found that RIS's actions hampered and interfered with Relaxation's right to use the property reserved by the Dedication and that those actions caused damages. The court also found that RIS's conduct constituted a continuing trespass and interference with Relaxation's right to use the property. The court determined that the harm was irreparable and ordered a preliminary injunction to prevent the interference with Relaxation's use of the Dedication. The court denied RIS's motion to add six additional parties to the litigation because none were parties to the Dedication and none sought to own property at issue. The court also denied RIS's motion to declare Relaxation's request for injunctive relief moot due to a potential condemnation action partially because the City of Lake Ozark (the "City") had not filed any such action.

7

The next few months brought more motions. On May 25, 2012, the City filed motion to intervene because it had initiated eminent domain proceedings in April 2012. On July 24, 2012, Relaxation filed a Second Motion for Contempt, moving the court to find RIS in contempt and to comply with the terms of the April 13, 2012 preliminary injunction, and sought incarceration and monetary relief. RIS opposed that motion. On September 24, 2012, the court ordered RIS to show cause why an order of contempt should not be granted. On October 3, 2012, the City filed suggestions in support of its motion to intervene. On October 11, 2012, the City moved the court to stay the action pending resolution of the condemnation action.

After a hearing, on October 29, 2012, the trial court issued a "Judgment and Order of Contempt." In that ruling, the trial court *inter alia* granted the City's motion to intervene and granted in part the City's motion to stay, conditioning it partly on RIS's compliance with all provisions in the order of contempt. In that vein, the court noted that RIS admitted that it had not taken steps to comply with the preliminary injunction either through restoring damaged parking areas, removing encroachments, providing the "curb cut" off of the new driveway, or paying amounts ordered. The trial court ordered RIS to pay $45,892.94, representing Relaxation's attorney fees and surveyor fees to date.[6]

Additionally, in the "Judgment and Order of Contempt," the trial court granted Relaxation's motion to file a first-amended petition, stating that it was deemed to have been filed as of "this date," and granted RIS fifteen days to respond.[7] The amended

---

[6]The trial court has the discretion to assess attorney fees and expenses in a civil contempt order. *McNeill v. McNeill*, 708 S.W.2d 751, 754 (Mo. App. E.D. 1986) (citations omitted).
[7]It appears that Relaxation filed a motion for leave to amend its petition on April 17, 2012.

8

petition does not appear to be a part of the record.[8] The record does contain an answer from RIS to the first-amended petition that was filed (oddly enough) on October 26, 2012. From the answer to the first-amended petition, we glean that Relaxation filed a three-count amended petition for 1) breach of contract, 2) trespass, and 3) a TRO, a preliminary injunction, and a permanent injunction.[9]

After conditions that the trial court imposed in the "Judgment and Order of Contempt" were not met, Relaxation sought additional relief. On April 22, 2013, the trial court entered its "Judgment and Third Order of Contempt,"[10] which is the meat of RIS's appeal. In that ruling, the trial court stated that Relaxation shall have the immediate right to execute on the $45,892.94 fine awarded on October 29, 2012 and stated that Prewitt would be incarcerated without further notice if he failed to strictly comply with all requirements, including restoring the parking areas no later than May 28, 2013. The court also noted that it was not staying the case because the City and RIS had failed to meet earlier requirements that the court had imposed as a condition for a stay, including restoration of the parking areas. The parties do not direct us to any point in the record indicating that the trial court heard evidence on any of the three counts contained in Relaxation's amended petition, including breach of contract, trespass, and permanent

---

[8]There is a Miller County docket entry indicating that the docket is not inclusive of all rulings and filings because of proceedings that occurred in Camden County.

[9]"If an easement user exceeds his rights, either in the extent or manner of his use, he is guilty of trespass to the extent of the unauthorized use." *Grider v. Tingle*, 325 S.W.3d 437, 447 (Mo. App. S.D. 2010) (citations omitted). "If the actions outside the scope of the easement are capable of repetition, the servient owner may be awarded injunctive relief." *Id.*

[10]The record does not appear to contain a "Judgment and Second Order of Contempt."

9

injunctive relief. The Judgment and Third Order of Contempt does not indicate resolution of those issues.

On May 9, 2013, Relaxation filed an Execution/Garnishment/Sequestration Application and Order.

On May 16, 2013, RIS filed a motion to disqualify the third judge assigned to the case. That day, RIS also filed a Petition for Stay or Quashing of Execution under Rule 76.25,[11] alleging that the Judgment and Third Order of Contempt would not be final until May 19, 2013. In that motion, RIS argued that it has a meritorious defense to the action and has shown good cause due to the pending condemnation action. The next day, RIS filed a Motion to Reconsider and to Vacate the Temporary Restraining Order and Judgment and Third Order of Contempt. In that motion, RIS argued that the City's decision to acquire the lots by condemnation renders the TRO and preliminary injunction moot and that the condemnation proceedings take precedence over Relaxation's lawsuit and would preempt any rulings. On May 21, 2013, RIS motioned for a new trial. After a hearing, the trial court denied the motion for disqualification and appears to have passed on the additional motions.

On June 6, 2013, RIS filed suggestions in support of its May 16, 2013 motion to stay, which was one of the motions that the trial court appears to have passed on. RIS tendered $45,928.94 as security for the future satisfaction. RIS argued that it had filed after-trial motions, that the court had issued a writ of garnishment for the judgment, and that the return on that writ "will likely be prior to [the court's] rulings on the motions

---

[11]All rule references are to Missouri Supreme Court Rules (2014).

before it."  RIS argued that it had an "absolute right to immediately appeal" an "absolute right to suspend the Judgment by providing an adequate supersedeas bond," and that Relaxation has no right to collect on a judgment that has been bonded and secured.

On June 10, 2013, the trial court granted RIS's petition to Stay or Quash Execution and ordered RIS to deposit $52,000 as security for a bond under Rule 81.09(b) (not Rule 76.25).  In that order, the trial court suspended execution of all garnishment actions.

On July 17, 2013, Relaxation filed a fourth motion for contempt, demanding that RIS comply with the terms of the Judgment and Third Order of Contempt and asking for incarceration and daily fines.  On July 24, 2013, the trial court issued an order requiring RIS to show cause why an order of contempt should not be issued.

On July 30, 2013, RIS filed "Suggestions in Support of its Motion for a New Trial/Reconsideration," arguing that the trial court's jurisdiction in the condemnation action "superseded" its jurisdiction in the easement action.[12]  On August 5, 2013, RIS filed a motion to dismiss or stay action on Relaxation's fourth contempt motion pending resolution of the condemnation action.  In that motion, RIS argued that the "Judgment and Third Order of Contempt" are "not final and, indeed, are the subject of Defendant's Motion for New Trial."  RIS argued that it "cannot be found in contumacious violation of

---

[12]RIS argues on appeal that where real property is susceptible to condemnation, any covenants and restrictions are subordinate to eminent domain and that a plaintiff is not entitled to enjoin or collect damages for any alleged violations.  RIS contends that the trial court could not have entered any valid contempt orders on the TRO and preliminary injunction.  But apart from the fact that RIS does not assert that it has the power of eminent domain, the law in Missouri is clear that an entity that commits a trespass cannot later seek condemnation and use the condemnation as a defense to a claim for damages based on its prior trespass. *Mapco, Inc. v. Williams,* 581 S.W.2d 402, 404 (Mo. App. W.D. 1979).  *See also Harris v. L. P. & H. Constr. Co.*, 441 S.W.2d 377, 382 (Mo. App. 1969) ("The power of eminent domain does not carry with it the right to enter upon the land of another, commit a trespass covered by the statute here involved, and in defense to such action claim the power to condemn."); *Pogue v. Assoc. Elec. Coop., Inc.*, 760 S.W.2d 169 (Mo. App. S.D. 1988) (applying principle to pre-condemnation activities).

11

an order of this Court where this Court has been asked to review same but has not yet ruled and where this Court allowed [RIS] to bond against a Judgment whose validity remains at issue before this Court."

That same day, the court stayed "all pending matters in the above case until Condemnation case is heard."[13] The judge then recused himself, and a fourth judge, Hon. Ralph Jaynes was assigned to the case.

On August 28, 2013, RIS filed its notice of appeal from the Judgment and Third Order of Contempt.

After the case was submitted and argued to this court, Relaxation submitted correspondence indicating that a motion to lift the August 5, 2013 stay had been filed. Attached to the correspondence was an "Agreed Order Granting Motion to Lift Stay" that was entered by the trial court on November 26, 2014. The order stated that the stay entered by the court on August 5, 2013 is immediately lifted and noted that no case management conference to discuss and establish dates and deadlines would be set until after our ruling in this appeal or until January 1, 2015, whichever is later.[14]

## JURISDICTION

We have a duty to examine our jurisdiction *sua sponte*. *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 468 (Mo. banc 2011) (citation omitted).

---

[13]Neither party challenges the discretion of the trial court to stay the proceedings until the conclusion of the separate condemnation matter. The condemnation proceedings have no direct impact on the issues of this case; however, if the condemnation matter is (or was) successfully completed, it will result in a more definite amount for the currently accruing damages for trespass that are based on what appears to be RIS's blatant disregard for Relaxation's legal and property rights and blatant disregard for the authority of the courts of this State. The trial court retains discretion to allow the amendment of the pleadings in this matter following remand to properly frame the issues and damages claimed, including punitive damages.

[14]We offer no opinion on the jurisdiction of the trial court to enter this order while the case is pending on appeal because it is irrelevant to the analysis of our jurisdiction.

12

That duty includes ascertaining whether the trial court's contempt order is final for purposes of appeal. *In re Crow and Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003). If the Judgment and Third Order of Contempt is not final, we lack jurisdiction and must dismiss the appeal.

A civil contempt order is appealable when it becomes final. *Carothers v. Carothers*, 337 S.W.3d 21, 24 (Mo. banc 2011) (citation omitted). Such order is not final until it is enforced. *Id.* "Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered." *Crow*, 103 S.W.3d at 780. The purpose of a civil contempt order is to compel compliance with relief that has been granted. *Emmons v. Emmons*, 310 S.W.3d 718, 722 (Mo. App. W.D. 2010) (citation omitted). "A party held in civil contempt has two options: (1) purge himself of the contempt by complying with the trial court's order, making the case moot and unappealable, or (2) appeal the order, ***but only after the trial court's order is enforced by incarceration or otherwise***." *Id.*

As such, a civil contempt order is not final and appealable until it is enforced. *Id.* "Enforcement of a contempt order can take the form of imprisonment or the imposition of a fine." *Id.* The form of enforcement dictates when the contempt order is deemed enforced and therefore when the order becomes final and appealable. *Id.*

In the case at bar, the Judgment and Third Order of Contempt included both enforcement mechanisms: a fine in the form of assessment of attorney fees and costs expended, and an order for Prewitt's incarceration in the event of failure of compliance by a certain date. While it appears that Prewitt could have been incarcerated under the terms of the order, there is no indication in the record that the threat of imprisonment was

enforced or a commitment order was issued. It is the case, however, that Relaxation attempted to execute on the fine.

"When the remedy is a fine, the contempt order is 'enforced' when the moving party executes on the fine." *Crow*, 103 S.W.3d at 781. Here, Relaxation did attempt to execute the fine by filing an Execution/Garnishment/Sequestration Application and Order on May 9, 2013.[15]

Complicating the question of whether we have jurisdiction over the cause, however, is the timeliness of RIS's notice of appeal. A notice of appeal must be filed within ten days of a judgment or order appealed from becoming final. § 512.050;[16] Rule 81.04(a). "The timely filing of a notice of appeal is a jurisdictional requirement." *Thorp v. Thorp*, 390 S.W.3d 871, 875 (Mo. App. E.D. 2013) (citations omitted). "Thus, if a notice of appeal is untimely, an appellate court lacks jurisdiction and must dismiss." *Id.*

Rule 81.04(a) applies to contempt orders. *Carothers*, 337 S.W.3d at 25; *Crow*, 103 S.W.3d at 782. In this case, the contempt order was enforced and the judgment was appealable on May 9, 2013 because that was the date Relaxation executed on the fine. *Crow*, 103 S.W.3d at 781. RIS's notice of appeal was due ten days after the contempt order was enforced. RIS did not file its notice of appeal until August 28, 2013, however, well outside of its deadline.[17] Accordingly, RIS's notice of appeal was untimely, and

---

[15]There was no hearing on whether the contempt order was purged so as to invoke an exception described in *Carothers*. 337 S.W.3d at 25.

[16]All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

[17]RIS's after-trial motions did nothing to change that deadline. At oral argument, the parties agreed that there are underlying issues yet to be resolved in the trial court that stem from Relaxation's amended petition. Even though the trial court's ruling included a denomination of "Judgment," it did not resolve all matters in this case. Thus, there could be no authorized after-trial motions under Rule 81.05(a)(2).

14

pursuant to Rule 81.04, we are without jurisdiction and must dismiss the appeal. The contempt order thus is not appealable.[18]

## Conclusion

Because we do not have jurisdiction over the issues presented, the appeal is dismissed.

_____
Gary D. Witt, Judge

All concur

---

[18]We decline to decide, however, whether an appeal after final judgment of the contempt order is totally foreclosed by RIS's failure to timely file its interlocutory notice of appeal. Section 512.020(5) states that an appeal may be taken from any "Final judgment in the case or from any special order after final judgment in the cause; *but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case*." (Emphasis added.) *See Annotation, Reviewability, on appeal from final judgment, of interlocutory order, as affected by fact that order was separately appealable*, 79 A.L.R.2d 1352 (1961 and Supp. 2010) (discussing whether the reviewability on appeal from the final judgment of an interlocutory order in a civil case is affected by the fact that the interlocutory order was separately appealable, it being assumed that no appeal from the interlocutory order was taken, or, if taken, that it was dismissed without determination of its merits); *Padgett v. Smith*, 103 S.W. 943, 945 (Mo. 1907) (holding that appellant was "not compelled to appeal from the interlocutory judgment" and could have brought the "whole case" at once) (citing *Aull v. Day*, 34 S.W. 578 (Mo. 1896) and *Ess v. Griffith*, 30 S.W. 343 (Mo. 1895)). *See also In re Estate of Givens*, 234 S.W.3d 519, 521 (Mo. App. E.D. 2007) (holding that an appeal from an interlocutory order is not mandatory under probate appeals statute); *In re Estate of Standley*, 204 S.W.3d 745, 748 (Mo. App. S.D. 2006) (en banc) (holding that probate appeals statute created "expedited right to appeal" certain interlocutory orders but that ten-day deadline in Rule 81.04(a) applied to those interlocutory orders); *In re Estate of Couch*, 920 S.W.2d 165, 168 (Mo. App. W.D. 1996) (holding that probate appeals statute that allowed appealable interlocutory orders did not foreclose appeal of those matters after final judgment because legislative language allowed for a "second opportunity" to appeal).

15