

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| NICOLE LYNN MARTIN, | ) | |
| Respondent, | ) | |
| v. | ) | WD79044 |
| | ) | |
| MATTHEW RAY MARTIN, | ) | |
| Appellant. | ) | FILED: October 11, 2016 |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE PATRICIA S. JOYCE, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE AND GARY D. WITT AND EDWARD R. ARDINI, JR., JUDGES

Matthew Martin ("Father") appeals from a judgment finding him in contempt and another judgment dissolving his marriage to Nicole Lynn Martin ("Mother"). Regarding the contempt judgment, Father contends that he was not in contempt, the judgment did not set forth the facts and circumstances that constituted contempt, and the court erred in ordering him to pay attorney's fees as part of the judgment. Concerning the dissolution judgment, Father argues that the court erred in awarding Mother sole physical custody of their daughter and in valuing his retirement plans. For reasons explained herein, we dismiss Father's appeal of the contempt judgment and affirm the dissolution judgment.

Father and Mother were married on April 10, 1998, and had one child ("Daughter"). They separated in May 2014. Mother filed her petition for dissolution of marriage in June 2014, and Father filed a counter-petition a month later. Daughter was 16 years old when the parties filed the dissolution petitions.

Shortly before Mother filed her dissolution petition, there was an incident in which Mother alleged that Father cut Mother's arm with a kitchen knife. Based upon this incident, Mother filed a petition for an adult order of protection and a child order of protection on behalf of Daughter. Ex parte orders of protection were issued for Mother and Daughter.

The court held a contested hearing on full orders of protection for both Mother and Daughter on July 17, 2014. The court entered a full adult order of protection for Mother. The court took the request for a full child order of protection under advisement and ordered that the ex parte child order of protection remain in effect pending the court's ruling in the dissolution case.

Mother then filed a motion for temporary custody and support. The court held a hearing on the motion on October 9, 2014. Following the hearing, the court entered a temporary child custody and support order in which it ordered Father to continue to provide health insurance for Daughter and to pay Mother $523 per

---

[1] Mother has filed a motion to strike Father's brief or dismiss his appeal based on his violations of Rule 84.04. We exercise our discretion to review the merits of Father's appeal despite the numerous briefing deficiencies, because the violations do not impede our review. *See Travelers Commercial Cas. Co. v. Vac-It-All Servs., Inc.*, 451 S.W.3d 301, 304 n.1 (Mo. App. 2014). Mother's motion is denied.

month in child support, retroactive from the date of service. The court further ordered that the October 2014 payment be paid directly to Mother and that subsequent payments be paid through the Family Support Payment Center by wage withholding.

On Mother's motion, the court entered a judgment on January 27, 2015, finding Father in contempt of the October 9, 2014 temporary child custody and support order. The court found that Father's employer had never received the paperwork for the wage withholding and that Father had failed to provide child support for November and December 2014. Additionally, the court found that Father's failure to provide the court-ordered child support resulted in additional costs and attorney's fees for Mother. The court concluded that Father had completely disregarded the court's orders and directives and was, therefore, in contempt. The court ordered Father to pay $1046 in back child support and $500 in attorney's fees to Mother.

Trial on the dissolution petition and counter-petition was held in April 2015. On April 23, 2015, the court entered its judgment dissolving the parties' marriage. In the judgment, the court awarded sole physical custody of Daughter to Mother and joint legal custody of Daughter to Mother and Father; entered a parenting plan providing for Father to have parenting time with Daughter as agreed upon by Father and Daughter; ordered Father to continue to pay $523 per month in child support; and valued and divided the parties' marital assets. Father appeals from both the contempt judgment and the dissolution judgment.

3

Father's first three points challenge the January 27, 2015 contempt judgment entered against him. He contends that he was not in contempt, the judgment did not set forth the facts and circumstances constituting contempt, and the court erred in ordering him to pay attorney's fees as part of the judgment.

Before we can reach the merits of Father's claims, we have a duty to determine whether we have jurisdiction to do so. *Long v. Long*, 469 S.W.3d 10, 13 (Mo. App. 2015). We have jurisdiction to review a contempt order only if it is final and appealable. *Davis v. Davis*, 475 S.W.3d 177, 181 (Mo. App. 2015). A contempt order is not final and appealable until it is enforced. *Emmons v. Emmons*, 310 S.W.3d 718, 722 (Mo. App. 2010). A contempt order is enforced through imprisonment or the imposition of a fine. *Id*. If the enforcement remedy is imprisonment, the contempt order is not enforced until the issuance of a warrant of commitment or actual incarceration. *Id*. at 722. If the enforcement remedy is a fine, the contempt order is not enforced until the moving party executes on the fine. *Id*. at 724 n.4.

In this case, there is nothing in the record indicating that the contempt order has ever been enforced. No warrant of commitment has been issued, no actual incarceration has occurred, and no fine has been imposed. Although Father notes that a garnishment order has been issued on behalf of Mother, "[c]ollection efforts to enforce payment obligations set forth in a contempt order are not 'enforcement' mechanisms designed to coerce payment of the contempt order." *Id*. Rather,

4

"[t]he only monetary enforcement mechanism designed to coerce performance of a contempt order is a fine." *Id*. "Execution efforts to enforce a coercive fine are distinguishable . . . from execution efforts to enforce the underlying payment obligation giving rise to the contempt order." *Id*. Mother's garnishment was an execution effort to enforce the underlying payment obligation giving rise to the contempt order, not to enforce a coercive fine.[2]

Father has failed to demonstrate that the contempt order has ever been enforced. Therefore, the contempt order is not a final, appealable judgment. Father's appeal of the contempt judgment, as reflected in Points I, II, and III, is dismissed.

### STANDARD OF REVIEW

Father's remaining two points challenge the dissolution judgment. Appellate review of a dissolution judgment is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Jenkins v. Jenkins*, 368 S.W.3d 363, 366 (Mo. App. 2012). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. at 366-67. The party challenging the dissolution judgment has the burden of demonstrating error. *Shaw v. Shaw*, 413 S.W.3d 332, 334 (Mo. App. 2013). We view the evidence and any reasonable

---

[2] Father also argues that the garnishment satisfied his underlying payment obligation. There is nothing in the record before us to support his claim. Even if he did purge himself of the contempt by paying the underlying obligation, however, his points challenging the contempt order would still be unappealable, because they would be moot. *Emmons*, 310 S.W.3d at 723-24; *Bruns v. Bruns*, 186 S.W.3d 449, 452 (Mo. App. 2006).

5

inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences. *Id*. We recognize that the circuit court was "'free to believe or disbelieve all, part, or none of the testimony of any witness.'" *Id*. (citation omitted).

ANALYSIS

In Point IV, Father contends the circuit court erred in awarding Mother "full custody" of Daughter. He argues that the court may not "take custody of a child away from a parent" unless the parent's unfitness is shown, and he was never proven to be an unfit parent.

The court awarded Mother sole physical custody and Mother and Father joint legal custody of Daughter. In its judgment, the court discussed each of the eight factors in Section 452.375.2, RSMo Cum. Supp. 2013, that it considered in determining that this custody arrangement was in Daughter's best interests. The court found that seven of the eight factors weighed in favor of Mother, while the eighth factor was neutral.

The only finding that Father challenges regarding any of these factors is the court's finding that the relationship between Daughter and Father was "strained." Father argues that the only reason why his relationship with Daughter was strained was because of Mother's false accusations against him. Daughter testified, however, that she has never really had a good relationship with Father and that, around the time of trial, he was pushing her too much and not "giving [her] time to think about things and cope with things." Additionally, Mother testified that Father

6

has been emotionally absent and paid little attention to Daughter "pretty much" throughout her life. We must defer to the court's decision to accept this testimony as credible. *Shaw*, 413 S.W.3d at 334.

Contrary to Father's assertion, the court did not take custody of Daughter away from him. The court's parenting plan granted Father parenting time with Daughter; it simply provided that such parenting time be "at all times that Father and the child agree." Given that Daughter was 17 years old at the time of trial and was preparing to graduate high school a year early and attend college full time,[3] substantial evidence supported the court's determination that this parenting plan and custody arrangement were in Daughter's best interests. Point IV is denied.

In Point V, Father contends the circuit court erred in valuing his MetLife retirement account and his MBS Textbook Exchange retirement account. He argues that, before trial, he had to cash out his MetLife account to pay for legal fees and expenses related to Mother's "false claims of domestic violence." He further argues that the value of his MBS account at the time of trial was approximately half of what the court found it to be.

Generally, the appropriate date for valuing marital property is the date of trial. *Schubert v. Schubert*, 366 S.W.3d 55, 72 (Mo. App. 2012). Therefore, under this rule, if a marital asset does not exist at the time of trial, the court cannot value and include it in the division of marital property. *Id*. "However, where a party has intentionally secreted or squandered a marital asset in anticipation of the

---

[3] Mother's brief indicates that Daughter is now 18 and is a full-time college student.

7

marriage being dissolved, the court may hold that party liable for the amount of the asset by awarding it to him or her in its division of the marital property." *Id*. The circuit "court is free to disbelieve a witness' testimony or vague accounting that [the witness] used expended money for living expenses." *Id*.

In its judgment, the court found that Father "cashed out large sums of money, from retirement accounts acquired during the marriage, during the pendency of this case" but that Father "testified he still has monies available." Consequently, the court accepted Mother's values of these accounts, valuing Father's MetLife account at $27,639.74 and his MBS account at $11,165.98. The court then awarded the accounts to Father.

At trial, Mother testified that Father withdrew approximately $27,600 from his MetLife account in 2014. Father admitted that he withdrew the funds but testified that he needed to in order to pay attorney's fees due to Mother's "false allegations" against him and to pay other expenses. Father testified, however, that he spent only $7100 to pay his attorney's fees, and he admitted that he still had funds from the MetLife account available to him. The circuit court was free to disbelieve Father's testimony that he needed to withdraw the retirement funds to pay legal and other expenses, and we must defer to its decision to do so. *Id*.

As for Father's contention that the court valued the MBS account incorrectly, we note that he did not present any independent evidence at trial regarding the value of this account. The only evidence he offered was his statement of marital and non-marital property and liabilities, which he completed

8

more than nine months before trial and which valued the MBS account at $4313. The court was free to disbelieve Father's evidence, and we must defer to its decision to do so. *Id*. Point V is denied.

## CONCLUSION

Father's appeal of the contempt judgment is dismissed. The dissolution judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.