

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JESSICA LYNNE JOHNSON,<br>N/K/A JESSICA L. GOULD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85534 |
| | ) | |
| ISAIAH BEN JOHNSON, | ) | Opinion filed: May 23, 2023 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE CHARLES H. MCKENZIE, JUDGE**

Division One: Anthony Rex Gabbert, Presiding Judge,
W. Douglas Thomson, Judge and Janet Sutton, Judge

Jessica Gould ("Mother") appeals from a civil contempt judgment finding that she willfully, contumaciously, and without good cause disobeyed the trial court's judgment modifying child custody by withholding her minor child from Isaiah Johnson ("Father"). Mother brings three points on appeal. First, Mother argues that the trial court erred in preventing Mother from cross-examining the guardian *ad litem* during the contempt hearing. Second, Mother argues that the trial court erred in ordering her to pay $8,000 in fees without first finding that she

was able to pay those fees in violation of the Eighth Amendment of the United States Constitution.  Finally, Mother argues that the trial court violated her due process rights at the contempt hearing.  Because Mother's notice of appeal is untimely, Mother's appeal is dismissed.

## Factual and Procedural History[1]

Mother and Father married in 2014.  They had a single daughter ("Child"), born in 2017.  In a judgment entered on September 30, 2019, the Circuit Court of Jackson County dissolved the parties' marriage and approved a parenting plan proposed by the GAL, as stipulated to by both Mother and Father.  The parenting plan gave Mother sole legal custody of Child and awarded the parties joint physical custody.  During the dissolution proceedings, Shannon Gordon served as GAL.

Because Father was an active-duty member of the United States Navy at the time of the dissolution decree, the decree adopted "no set schedule of parenting time."  Instead, the decree awarded alternating periods of three days of parenting time to Father, followed by two days of parenting time to Mother, during Father's military leave.  The decree also specified that Father would be allowed three video or telephone calls a week with Child while Child was in Mother's care.  Father and Mother were obligated to communicate with each other regarding issues concerning Child over a communication application, Our Family Wizard.  The

---

[1] This Court has previously affirmed a judgment between these parties modifying child custody in a *per curiam* order.  *See Gould v. Johnson*, 645 S.W.3d 633 (Mo. App. W.D. 2022).  Mother filed a petition for writ of certiorari with the United States Supreme Court in that case, which was denied on November 14, 2022.  Many of the facts herein are taken from the memorandum in support of that order without further attribution.

dissolution decree required that each parent could not take Child over 100 miles away from their residence without first contacting the other parent at least seven days in advance. If Mother wanted to relocate the Child, she was required to notify Father at least 60 days before the proposed relocation pursuant to Section 452.377's relocation requirements.[2]

Despite the terms of the parenting plan to which the parties had agreed, Mother denied Father physical contact with Child beginning even before the dissolution decree was entered. On October 24, 2019, Mother met with an officer from the Independence Police Department and stated that she suspected that Father had sexually assaulted Child on or about September 19, 2019, the last time Father had physical custody of Child. Mother described a diaper rash Child had after visiting Father and that Child had stated on October 19 and 20, 2019 that "daddy hurt me," while gesturing toward her genital area. The Children's Division of the Department of Social Services began investigating the allegations of sexual assault on October 25, 2019. Mother also initiated a sexual assault investigation of Father by the Naval Criminal Investigative Service ("NCIS").

On March 20, 2020, Children's Division closed its investigation of Mother's allegations. It found that "[t]here was no sexual abuse to [Child] which was caused by [Father]," and that "[t]here was insufficient evidence found throughout this investigation to support a [preponderance of the evidence] finding of sexual

_____

[2] All statutory citations are to RSMo 2018 as currently updated unless otherwise noted.

abuse." NCIS allowed local police to take over the investigation. On June 4, 2020, the Jackson County Prosecuting Attorney's office declined to prosecute, concluding that "there is just not evidence of molestation." As part of the custody modification action, described in detail below, the trial court also found that Mother had not met her burden to prove allegations of sexual abuse by Father.

In November 2019, Mother stopped responding to Father's messages on Our Family Wizard. As early as June 2020, Mother and Child moved from Independence to Seymour, Missouri, a distance of approximately 200 miles, to live with her new husband without notifying Father. Then, in January 2021, Mother relocated with Child to Bemidji, Minnesota, claiming that it was a temporary vacation. Father presented evidence to the trial court that Mother had intended the trip to be a permanent move rather than a temporary vacation, and that Mother and her new husband were planning to operate a farm in Minnesota.

Father returned to Missouri in June 2020 and was discharged from active duty in the Navy in July 2020.[3] Father began residing in a four-bedroom home in Independence owned by his parents.

On June 17, 2020, Father filed a motion to modify the child-custody provisions of the dissolution decree. In his motion, Father alleged that substantial and continuing changes of circumstances had occurred, including his discharge from active military duty and return to Missouri; Mother's refusal to communicate with him and her withholding of Father's parenting time with Child; and Mother's

---

[3] Father remained a member of the Navy Reserves.

relocation with Child without notice to Father. The trial court re-appointed Shannon Gordon as GAL in connection with the modification motion.

The trial court conducted a bench trial on the motion to modify on March 26, 2021. During the trial, Mother acknowledged that she did not follow the child-custody provisions of the dissolution decree and stated under oath that she would not follow any parenting plan ordered by the court that allowed Father unsupervised parenting time with Child.

On May 3, 2021, the trial court entered its Judgment of Modification. The modification judgment found that Mother had denied Father any contact with Child since September 2019, prior to entry of the initial dissolution decree. The modification judgment found that Mother had not met her burden to prove sexual abuse by Father. The trial court awarded Father sole legal custody of Child and maintained joint physical custody for both parties. The modified parenting plan provided that Mother would have parenting time with Child on alternating weekends during the school year and alternating weeks during the summer months. The trial court also ordered Mother to pay Father $176.00 per month in child support.

Despite the modification judgment and true to her word, Mother continued denying Father access to Child as required by the modified parenting plan. Father filed a motion for judgment of contempt against Mother on August 26, 2021, stating that he had not seen Child since June 20, 2021. Father requested the trial court hold Mother in contempt, commit Mother to the Jackson County Jail until

she complied with the trial court's modification judgment, and order that Mother pay Father's reasonable attorneys' fees in pursuing the contempt motion. Mother then renewed her allegations that Father was abusing Child by once again reporting the abuse to Children's Division, and, for the first time, adding allegations that members of Father's family were also abusing Child. Children's Division once again found these allegations unsubstantiated, noting that Child had been examined by two separate medical providers who did not diagnose Child with abuse, and closed their case on August 4, 2021. Mother also reported the alleged abuse to the Independence Police Department, which closed their investigation and declined to recommend charges be filed by the prosecuting attorney's office.

After several delays, the trial court held a hearing on Father's motion for contempt on March 25, 2022. Both Mother and Father were present and represented by counsel. The trial court appointed a lawyer to represent Mother in the hearing after finding she could not afford one on her own.[4] GAL Gordon was also present. In support of his motion, Father called his mother, who he lived with at the time. Father also testified at the hearing, stating that the last time he had seen Child in person was in June 2021. Both Father and Father's mother denied ever abusing Child. Father also presented evidence and testimony regarding his request for his attorney's fees without objection from Mother.

---

[4] The trial court appointed Mother a lawyer because Father had requested that the trial court commit Mother to the Jackson County Jail, and thus Mother's liberty was at stake.

Before Mother presented evidence, Mother's attorney told the trial court that she and Mother had a fundamental disagreement over whether to call GAL Gordon as a witness. Mother's attorney informed the trial court that she had no intention of calling Ms. Gordon as a witness and had told Ms. Gordon as much before the hearing. Ms. Gordon objected to being called as a witness because she did not have any firsthand information about the contempt case and had entered all of her documentation and investigation to the trial court as evidence at the hearing, and she did not have representation with her.

The trial court granted Ms. Gordon's objection to being called as a witness, stating two reasons. First, the trial court noted that this case had been repeatedly delayed because of Mother's struggle to find representation and that the trial court had twice appointed her counsel. Second, the trial court noted that it was inappropriate to call Ms. Gordon to the stand without her representation present. The trial court also stated that he had all of the information he needed from Ms. Gordon, and any inquiry into what she did in her investigation would not give him any insight into the issues surrounding the contempt action.

Mother called her father-in-law, Stephen Gould, who owns the property on which Mother resides. Mother also called her present husband, Jared Gould, to testify. Mother also testified.

At the end of the hearing, the trial court took the motion for contempt under advisement but made several verbal findings and orders. First, the trial court found that Mother's allegations of abuse remained unsubstantiated. The trial court

ordered Child be returned immediately to Father until further order from the court.  He also ordered that Father immediately place Child in counseling and permit Mother to have at least three video calls with Child per week.

Child remained with Father until the trial court ruled on the motion for contempt in its April 20, 2022 Judgment of Contempt.  The trial court found Mother in contempt pursuant to Section 452.400.6, RSMo.  The trial court determined that Mother "willfully, contumaciously, and without good cause" disobeyed the judgment of modification by withholding Child from Father during his parenting times.  The trial court noted that Mother withheld Child from Father beginning in June 2021 through the conclusion of the hearing on March 25, 2022.[5]

The trial court determined that Mother's "actions have come at a great cost to [Father], both financially and with regard to reestablishing the parent child relationship with [Child]."  Accordingly, the trial court determined Father was entitled to compensatory time with Child pursuant to a modified parenting schedule that ended in August 2022.  Both parties admit that Father's compensatory time per the trial court's contempt judgment commenced with the date of said judgment.  The trial court ordered the parties to abide by the May 2021 modified parenting plan after August 2022.  Additionally, the trial court ordered that Child remain in counseling until her therapist finds it is no longer

---

[5] The Judgment states that Mother withheld Child from Father between June 2021 through the conclusion of the hearing on March 25, 2021.  This is obviously a typographical error, given that March 25, 2021, occurred before June 2021, and the contempt hearing was held on March 25, 2022.

8

therapeutically necessary, with such costs to be paid by Mother. Lastly, the trial court ordered Mother to pay Father's legal fees in pursuing the motion for contempt, totaling $3,544.38. The trial court considered and explicitly declined to impose incarceration or fines on Mother.

Mother appeals.

## Analysis

Mother brings three points on appeal. In her first point, she argues that the trial court erred in not allowing her to call the GAL to the stand to cross-examine her. In her second point, Mother argues that the trial court erred in assessing excessive fees against her in violation of the Eighth Amendment by ordering she pay Father's attorney's fees relating to the contempt order without first finding that Mother could pay them.[6] Finally, Mother argues that her due process rights were violated at the contempt hearing. Because Mother's notice of appeal was untimely filed, we dismiss her appeal.

"'An indispensable prerequisite to appellate jurisdiction and a vital step for perfecting an appeal is the timely filing of a notice of appeal.'" *State v. Carter*, 202

---

[6] Most of Mother's argument in her second point is directed at GAL fees and the relation of Section 514.040 (when a party may sue as a pauper) to such fees. However, the GAL fees are contained in a separate circuit court order that Mother did not include in this appeal and thus did not preserve for our review. *See Powell v. City of Kansas City*, 472 S.W.3d 219, 229 (Mo. App. W.D. 2015) ("Pursuant to Rule 81.08(a), a notice of appeal must specify the judgment or order appealed from…and appellate courts are 'confined to review the decision identified in the notice of appeal.'") (quoting *Maskill v. Cummins*, 397 S.W.3d 27, 32 (Mo. App. W.D. 2013). Because Mother did not properly appeal the order regarding payment of the GAL fees, we only address her argument regarding the attorney's fees she was required to pay as part of the contempt judgment.

S.W.3d 700, 706 (Mo. App. W.D. 2006) (quoting *State ex rel. Blackwell v. Elrod*, 604 S.W.2d 768, 769 (Mo. App. E.D. 1980)). Mother was required to file her notice of appeal "not later than ten days" after the contempt judgment became final. Rule 81.04(a); *see also Long v. Long*, 469 S.W.3d 10, 16 (Mo. App. W.D. 2015) (stating that Rule 81.04(a), and not Rules 74.01(a), 75.01, and 81.05(a)(1), applies to contempt judgments that are final and appealable). Thus, the ultimate question in this case is when the contempt judgment became final.

"Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted." *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003) (quoting *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994)). A contemnor like Mother has two options after being found in contempt. *Jones v. Jones*, 296 S.W.3d 526, 528 (Mo. App. W.D. 2009). A contemnor can: (1) choose to purge themselves by complying with the terms of the judgment of which the contempt is meant to coerce compliance, which makes the contempt judgment moot and unappealable; or (2) appeal the contempt order, but only after the contempt order has been enforced by imposition of a penalty. *Id.* at 528-29. "An order finding a party in contempt is interlocutory only and not final until it is actually enforced." *Id.* at 529. Thus, enforcement of a judgment of contempt makes the judgment final for purposes of appeal. *Id.*

Accordingly, we must first determine whether the contempt judgment's conditions – compensatory time and Child's therapy costs – were purge

conditions, making Mother's claims moot and unappealable, or were remedies for finding Mother in contempt that were executed on, thus making the contempt order final and appealable. We hold that the contempt judgment's conditions were the latter: remedies that were executed on, making the order final and appealable.

Traditionally, contempt judgments are enforced using two remedies: a per diem fine or incarceration. *Crow*, 103 S.W.3d at 781. However, the imposition of fines or incarceration are not the only enforcement mechanisms available to a trial court when issuing a contempt judgment finding that a contemnor failed to comply with a custody order. Section 452.400.6 provides trial courts a unique set of statutory remedies for enforcing child custody-related contempt judgments, in addition to the traditional remedial enforcement mechanisms of fines or incarceration. The remedies listed in Section 452.400.6 are *enforcement mechanisms* a trial court can employ to effect compliance with an order for custody with which a party has not complied.[7]

---

[7] Section 452.400.6 states:
Upon a finding by the court pursuant to a motion for a family access order or a motion for contempt that its order for custody, visitation or third-part custody has not been complied with, without good cause, the court shall order a remedy, which may include, but not be limited to:
(1) A compensatory period of visitation, custody or third-party custody at a time convenient for the aggrieved party not less than the period of time denied:
(2) Participation by the violator in counseling to educate the violator about the importance of providing the child with a continuing and meaningful relationship with both parents;
(3) Assessment of a fine of up to five hundred dollars against the violator payable to the aggrieved party;
(4) Requiring the violator to post bond or security to ensure future compliance with the court's access orders; and
(5) Ordering the violator to pay the cost of counseling to reestablish the parent-child relationship between the aggrieved party and the child.

11

In contrast to remedies that enforce contempt judgments, purge conditions generally relate to satisfying the underlying order for which the contempt judgment is meant to coerce compliance. For example, in *Bruns v. Bruns*, we determined that a wife who was held in contempt for failing to sign certain tax documents as required by the divorce decree could purge herself of the contempt by simply signing the tax documents. 186 S.W.3d 449, 451-52 (Mo. App. W.D. 2006); *see also Yeager v. Yeager*, 622 S.W.2d 339, 343 (Mo. App. E.D. 1981) (holding that a husband could purge himself of a contempt order by paying the mortgage payments he was ordered to pay in the underlying divorce decree); *Crow*, 103 S.W.3d at 780-81 (collecting cases in which a contemnor purges themselves of contempt by complying with the underlying judgment).

Here, the trial court granted Father's motion for contempt pursuant to Section 452.400.6, and ordered Father receive compensatory custodial time and Mother to pay therapy costs to reestablish the parent-child relationship between the Father and Child. In this case, the compensatory time and therapy costs are not purge conditions, but rather remedial enforcement mechanisms to enforce the underlying modification judgment. First, the trial court explicitly refers to these as "remedies" for finding Mother in contempt of the modification judgment, and refers to Section 453.400 in doing so. These remedies are altogether different than a purge condition, which is instead a condition that a contemnor can meet to *avoid* facing the remedy. When considering enforcement mechanisms, the trial court

12

stated that it expressly considered imposing incarceration or fines in this case, but declined and instead ordered that Mother provide Father compensatory time and pay Child's therapy costs, both remedies under Section 452.400.6. And notably, Mother has conceded these remedies are the enforcement mechanisms of the contempt judgment when arguing that the contempt order was enforced because she "felt like she had no other choice but to comply" with the compensatory parenting time order of the court.[8]

Second, because of Mother's actions in this case, she can never fully comply with the underlying modification judgment because Mother can never turn back the clock to "return" the time that Child lost with Father. Hence, compensatory time is a remedy for failing to comply with the modification order and not a purge condition. Likewise, paying for Child's therapy costs is not a purge condition because such payments do not bring Mother into compliance with the underlying modification order. Instead, such payments are a remedy imposed upon Mother for failing to comply with the modification judgment because of the "great cost to [Father], both financially and with regard to reestablishing the parent child relationship with [Child]."

Having determined that the compensatory time and the Child's therapy costs are remedial enforcement mechanisms, we must determine when

---

[8] Though we do not reach Mother's argument in this regard due to her failure to timely appeal, we note Mother's "no other choice" argument belies the very nature of remedies for contempt: *to coerce* one into compliance with the underlying judgment. Regardless, in making this argument, she concedes the contempt judgment was enforced.

enforcement occurred, i.e., when the contempt judgment was "executed," as that is the date the judgment became final and appealable for our purposes. As previously stated, in this contempt action resulting from a child custody modification case, the enforcement mechanism is derived from those remedies listed in Section 452.400.6. We do not find a case in which the date of execution of such a Section 452.400.6 remedy has been decided, and neither party provide us with such a case.

Importantly in determining same is that "[t]he form of enforcement dictates when the contempt order is deemed enforced and therefore when the order becomes final and appealable." *Relaxation, Inc. v. RIS, Inc.*, 452 S.W.3d 743, 751 (Mo. App. W.D. 2015). Accordingly, we are guided by when enforcement is triggered in the two, more traditional remedies for contempt: fines and incarceration. We note that "[w]hen the remedy is a fine, the contempt order is "enforced" when the moving party executes on the fine." *Crow*, 103 S.W.3d at 781. Similarly, "[w]hen the remedy is imprisonment, the traditional rule is that the contempt order is 'enforced' when there is 'actual incarceration pursuant to a warrant [or order] of commitment.'" *Id.* (internal citations omitted). Notably, the fine is not enforced when the fine is collected in its entirety, but rather when the moving party "executes" upon it, i.e., commences collecting same through court action. And, incarceration in a contempt order is enforced when there is "actual

14

incarceration," not when incarceration is complete.[9]  What we glean from this, and what is relatable to the form of remedial enforcement mechanisms utilized in the case at hand, is that it is the *initiation* of execution by court action that triggers enforcement.

Here, the contempt judgment ordered that Child remain[10] with Father until May 7, 2022, at which time Mother would have Child for one week each month through August 2022 while Father received compensatory time.  Pursuant to the underlying modification judgment, however, at that time Mother should have been exercising uninterrupted parenting time with the Child every other seven-day period as part of the Summer Schedule.  Thus, Father's compensatory time began the same day the contempt judgment was entered, because that date is the first day Father began receiving compensatory time.  In other words, the remedial enforcement action against Mother commenced the same day the contempt judgment was entered.  The contempt judgment was entered on April 20, 2022.  The contempt order became final and appealable on the date it was entered because that was the date it was enforced.  That the moment of enforcement happens also to be the day the judgment was entered in this case is an irrelevant fortuity.  Mother had ten days from the date of enforcement – April 20, 2022 – to

---

[9] Indeed, in nearly all instances execution and the resulting finality of judgment could not occur when incarceration is complete because the contemnor may very well be incarcerated *until compliance is achieved* with the underlying judgment, at which time the contempt has been purged rendering the appeal of same moot and unappealable.

[10] The April 20, 2022 contempt judgment acknowledged that Child had been in Father's custody since the trial.

file a notice of appeal with this court.[11]  *See Long*, 469 S.W.3d at 16.  Mother did not file her notice of appeal until May 26, 2022, well outside the ten-day window.  Thus, Mother's appeal is untimely filed and we are required to dismiss it.

### Conclusion

Mother's appeal is dismissed as untimely.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[11] Mother's ten-day window to file an appeal expired on May 2, 2022, because April 30, 2022 – ten calendar days after April 20, 2022 – fell on a weekend.

16